GRUNDY, ADMR., APPELLEE, *v.* DHILLON ET AL., APPELLANTS.

[Cite as *Grundy v. Dhillon,* 120 Ohio St.3d 415, 2008-Ohio-6324.]

(No. 2007–1292—Submitted April 23, 2008—Decided December 11, 2008.)

**CUPP, J.**

{¶ 1} A jury rejected appellee John Grundy's claims that appellants, Dr. Jagprit Singh Dhillon and Emergency Professional Services, Inc., negligently caused the death of Susanne Sumner in treating her at the Trumbull Memorial Hospital emergency room. Grundy moved for a new trial, arguing that a juror had failed to disclose during voir dire that one of his family members had been treated at Trumbull Memorial Hospital emergency room and that the juror had a low opinion of the hospital's standard of care. The trial court rejected the motion for a new trial, concluding that no juror misconduct had occurred. In so ruling, the trial court found that the juror had not falsely answered a question put to him but simply failed to volunteer information.

{¶ 2} The court of appeals reversed the trial court's denial of the motion for a new trial. Dr. Dhillon and Emergency Professional Services appealed, and we granted discretionary review.

{¶ 3} This case presents the questions of the appropriate standard of review of a ruling on a new-trial motion based on alleged juror misconduct and the showing required to establish that a juror's nondisclosure of material information on voir dire is sufficient to warrant a new trial. We hold that a trial court's ruling on a motion for a new trial based on a juror's failure to disclose information during voir dire is reviewed under the abuse-of-discretion standard. We further hold that to obtain a new trial on that ground, the moving party must show that a juror failed to answer honestly a material question on voir dire and that the moving party was prejudiced by the presence on the trial jury of a juror who failed to disclose material information. To demonstrate prejudice, the moving party must show that an accurate response from the juror would have provided a valid basis for a for-cause challenge. Because we conclude that the court of appeals failed to accord sufficient deference to the trial court's findings in ruling on the motion and incorrectly applied the legal standard, we reverse the court of appeals' judgment and reinstate the jury verdict.

I

A

{¶ 4} Appellee, John C. Grundy, is the administrator of the estate of Susanne Cheryl Sumner. In October 2000, Sumner went to the Trumbull Memorial

Hospital emergency room, complaining of nausea, vomiting, chills, and mouth and jaw pain. After taking Sumner's vital signs, hospital employees directed her to a section of the emergency room for patients with less serious conditions. Appellant Dr. Jagprit Singh Dhillon saw her there and diagnosed Sumner's problem as severe tooth pain, nausea, and vomiting. Dhillon ordered an injection for Sumner's pain and a medication for her vomiting.

{¶ 5} An hour later, Sumner was still vomiting. Dhillon ordered the emergency room staff to transfer Sumner to the area for patients with more serious conditions. He also ordered more medication for vomiting, an I.V. to prevent dehydration, and blood tests. Those tests revealed an elevated white-blood-cell count with a "left shift" and low serum bicarbonate levels, both of which indicated an infection. An hour after the test results came back, Sumner decided to go home. Dhillon did not order a "P.O." trial before he ordered Sumner's discharge from the hospital. (A P.O. trial is used to determine whether a patient can keep fluids down.) That evening, Sumner continued to vomit, but declined to return to the hospital.

{¶ 6} In the early morning hours of the next day, Sumner reported that she could not feel her fingers or feet. Sumner was transported to Trumbull Memorial Hospital emergency room and arrived at around 2:47 a.m. Dr. Adam Costarella saw her in the emergency room, diagnosed her with meningococcemia, and gave her antibiotics and steroids. Sumner eventually was transferred to the Cleveland Clinic, where she died on October 28, 2000.

### B

{¶ 7} In February 2002, Grundy, as administrator of Sumner's estate, sued appellants Dhillon, Emergency Professional Services, Inc., the group of doctors for whom Dhillon worked, and Forum Health, the legal entity that does business as Trumbull Memorial Hospital. Among other claims, Grundy asserted a wrongful-death claim due to Dhillon's allegedly negligent treatment of Sumner. Emergency Professional Services had a contract with Forum Health to provide doctors to staff the Trumbull Memorial Hospital emergency room. (Forum Health was later dismissed as a defendant and is not a party to this appeal.)

{¶ 8} A jury heard the case in 2004. Much of the evidence in the case focused on whether Dr. Dhillon's treatment of Sumner met the applicable standard of care. During voir dire, Grundy's lawyer asked the panel of potential jurors whether they had been patients at Trumbull Memorial Hospital. Juror Anthony Krusely Jr. volunteered that he had gone to the emergency room after a car accident and that his injuries were not serious. Grundy's lawyer then asked the panel if anyone had taken a family member to the Trumbull Memorial Hospital emergency room. Another juror responded "yes." Grundy's lawyer asked that juror if anything about that experience would influence his decision in the case.

But before the juror could answer, Grundy's lawyer proceeded to another line of questioning.

{¶ 9} Grundy's lawyer later asked three new questions at once: "Do you believe it is reasonable to expect that Emergency Professional Services, Inc., if they are going to sublet the emergency room in our community hospital, would hire qualified doctors to handle the emergency room? You think that is a reasonable expectation? What do you expect from an emergency room doctor?" Grundy's lawyer turned to juror Krusely and asked him, "[W]hat do you expect?" Krusely answered those questions, but did not respond to counsel's earlier question regarding whether the jurors had taken family members to Trumbull emergency room. After Krusely's response to the last set of compound questions, Grundy's lawyer moved on to question another juror.

{¶ 10} Later during voir dire, Grundy's lawyer again went back to Krusely and asked him: "Have you heard anything so far that makes you feel that you couldn't be fair?" Krusely replied: "No." Grundy's lawyer asked Krusely about his time in Germany in military service and his prior jury experience. Then Grundy's lawyer asked him again: "Do you think you can be fair to both sides and decide the case on the evidence?" Krusely answered, "Yes, absolutely."

{¶ 11} At the end of the trial, the jury returned a verdict for Dhillon and Emergency Professional Services. The jury specifically found in response to an interrogatory that Dhillon was not negligent in his treatment of Sumner. The trial court entered judgment on the verdict in favor of appellants.

{¶ 12} After the trial, counsel for Grundy interviewed some of the jurors outside the courthouse. During that interview, juror Krusely told the lawyer that he had taken his son to the Trumbull Memorial Hospital emergency room some time ago, and that based on that experience, he believed that the hospital's standard of care was low.

{¶ 13} Grundy filed a motion for a new trial under Civ.R. 59. Grundy argued that Krusely's failure to disclose his past experience with Trumbull Memorial Hospital constituted misconduct that warranted a new trial. (Grundy also argued that the jury's verdict was against the weight of the evidence, but that basis for the motion is not before us in this appeal.) The trial court held a hearing on the new-trial motion. At that hearing, juror Krusely was called to testify.

{¶ 14} Krusely testified that some time before the trial, he had taken his son to the Trumbull Memorial Hospital emergency room. He said that the hospital released his son without diagnosing his problem and that Krusely was not satisfied with the lack of a diagnosis. Krusely testified that he then took his son to North Side Hospital, where his son was diagnosed with mononucleosis. Krusely testified that as a result of this experience, his opinion of Trumbull Memorial Hospital's standard of care was low.

{¶ 15} Another juror, Rhonda Noel, also testified at the hearing on the motion for a new trial. Noel had heard Krusely's original responses during Grundy's lawyer's interview with jurors on the courthouse steps. Noel said that Krusely had originally told Grundy's lawyer that the standard of care at Trumbull was "rotten" and that Krusely would not let Dhillon treat him for a paper cut. Grundy's trial lawyer also testified to hearing these statements by Krusely after the trial. Grundy's lawyer testified that Krusely also said that Sumner's mother and boyfriend should not have relied on Trumbull's diagnosis of Sumner, but they should have sought additional treatment at another hospital. Grundy's lawyer testified that had he known of this information from Krusely during voir dire, the lawyer would have sought to remove Krusely from the panel for cause, and if that failed, he would have exercised a peremptory challenge to remove Krusely from the jury.

{¶ 16} The trial court denied the motion for a new trial. Regarding the juror misconduct claim, the trial court specifically found that "it is not evident that Juror Krusely gave false information to questions put to him, but rather that he did not volunteer all information that he may have if other specific questions were asked." The trial court also found: "In addition, there is no evidence in the record that Juror Krusely actually had a remembrance of the subject events at the time he was questioned during voir dire. His testimony during the hearing on the post-trial Motion for New Trial suggests otherwise." Finally, the trial court concluded that if the juror had said during voir dire that he thought the hospital maintained inadequate standards, that response would have seemed favorable to the plaintiff, Grundy. The trial court also opined in the alternative that attempting to use the comments Krusely made to Grundy's lawyer after the verdict was contrary to the aliunde rule in Evid.R. 606(B). However, the trial court did not specify which portion of the comments the court found to be contrary to Evid.R. 606(B).

## C

{¶ 17} On appeal, the Eleventh District Court of Appeals reversed. In a divided opinion, the majority concluded that juror Krusely should have disclosed during voir dire that he had taken his son to the Trumbull Memorial Hospital emergency room and that Krusely had committed juror misconduct by failing to honestly answer the question Grundy's lawyer had put to the entire panel. The court of appeals determined that Krusely's low opinion of Trumbull showed Krusely's partiality and that Grundy thus suffered prejudice to his right to an impartial jury.

{¶ 18} The dissenting judge disagreed, concluding that there was insufficient evidence of juror misconduct or of any denial of Grundy's right to an impartial jury. The dissent concluded that there was no evidence that Krusely gave a

dishonest answer, but only that he did not volunteer information. The dissent opined that Grundy had failed to show that the juror was biased.

{¶ 19} We accepted Dhillon's discretionary appeal and now reverse.

## II

{¶ 20} Dhillon's first proposition of law asserts that to obtain a new trial based on a juror's failure to disclose information during voir dire, the party must show that the juror failed to answer honestly a material question on voir dire and that a correct response would have provided a valid basis for a challenge for cause. Dhillon's second proposition of law contends that in determining whether a juror was untruthful during voir dire and whether any nondisclosure was a ground for a challenge for cause, the appellate court must not substitute its judgment for that of the trial court unless it appears from the record that the trial court's attitude was unreasonable, arbitrary, or unconscionable.

### A

{¶ 21} With regard to the first question, the court of appeals determined (and the parties do not dispute) that then Justice Rehnquist's majority opinion in *McDonough Power Equip., Inc. v. Greenwood* (1984), 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663, should be applied in determining whether a new trial is warranted based on a juror's failure to disclose material information during voir dire. *McDonough* considered the issue under Fed.R.Civ.P. 61, the counterpart to Ohio's similar harmless-error rule found in Civ.R. 61. While the Supreme Court's interpretation of the Federal Rules of Civil Procedure does not control in this case, which arises under the Ohio Civil Rules, the court of appeals and the parties found persuasive Justice Rehnquist's approach in *McDonough* in a situation that resembles the one in this case.

{¶ 22} In *McDonough*, the plaintiffs sued an equipment manufacturer for injuries sustained by a child from a riding lawn mower that McDonough manufactured. The lawyer for the plaintiffs had asked of the panel of potential jurors (i.e., the venire) before trial the following question: "Now, how many of you have yourself or any members of your immediate family sustained any severe injury, not necessarily as severe as Billy [the child plaintiff], but sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering, that is you or any members of your immediate family?" Juror Payton did not respond to this question asked of the entire panel. Payton was selected to sit on the jury.

{¶ 23} After a jury verdict for the defendant, the plaintiffs' lawyers learned that Payton's son had suffered a broken leg when a truck tire exploded. Apparently juror Payton did not believe that his son's broken leg resulted in "disability or prolonged pain and suffering," as the question had asked, so Payton

believed he had nothing to disclose in response to that question. Id. at 555, 104 S.Ct. 845, 78 L.Ed.2d 663.

{¶ 24} The plaintiffs moved for a new trial based on this nondisclosure, but the district court denied the motion. Id. at 550, 104 S.Ct. 845, 78 L.Ed.2d 663. The Tenth Circuit Court of Appeals reversed and ordered a new trial based on the juror's failure to disclose his son's injury in response to the question to the venire panel. The Tenth Circuit opined that Payton's silence had impaired the plaintiffs' right to exercise their peremptory challenges with regard to Payton. Id. at 549, 104 S.Ct. 845, 78 L.Ed.2d 663.

{¶ 25} Upon review, Justice Rehnquist's majority opinion in *McDonough* held that to obtain a new trial when a juror is alleged to have failed to disclose material information on voir dire, a party must first demonstrate that a juror failed to answer a material question honestly on voir dire, and then must further show that a correct response would have provided a valid basis for a challenge for cause. Id. at 556, 104 S.Ct. 845, 78 L.Ed.2d 663. Thus, the court reversed the court of appeals' judgment granting a new trial and remanded the matter to the trial court for consideration of the question under this standard in the first instance. Id.

{¶ 26} Justice Rehnquist explained:

{¶ 27} "To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." Id. at 555, 104 S.Ct. 845, 78 L.Ed.2d 663.

{¶ 28} Justice Rehnquist reasoned that this is particularly so given the harmless-error rule embodied in Fed.R.Civ.P. 61, which requires that courts must disregard "all errors and defects that do not affect any party's substantial rights." 464 U.S. at 553, 104 S.Ct. 845, 78 L.Ed.2d 663. (As noted above, Ohio has a similar harmless-error rule: Civ.R. 61.) Thus, consistent with the harmless-error rule, a party must demonstrate that he was prejudiced by the presence on the trial jury of a juror who failed to disclose material information.

{¶ 29} Our decision in *Pearson v. Gardner Cartage Co., Inc.*, 148 Ohio St. 425, 36 O.O. 77, 76 N.E.2d 67, paragraph two of the syllabus, is in accord with this approach. In *Pearson*, prospective jurors on voir dire examination in a personal-injury case remained silent on the subject of accidents or claims when asked whether they or any family member had been involved in an accident or had made any claim in regard to an accident. We held that whether a party is

prejudiced by the fact that such a juror sat in the trial of the case without disclosure is to be determined according to the sound discretion of the trial court. Id. In *Pearson,* we also approved the reasoning of the trial court in that case. Id. at 449, 36 O.O. 77, 76 N.E.2d 67. The trial court in *Pearson* found it significant that there was "no evidence that [the jurors'] failure to answer on the voir dire examination was deliberate." Id. at 446, 36 O.O. 77, 76 N.E.2d 67.

{¶ 30} As Justice Rehnquist's opinion in *McDonough* stated, " ' "[a litigant] is entitled to a fair trial but not a perfect one," for there are no perfect trials.' " 464 U.S. at 553, 104 S.Ct. 845, 78 L.Ed.2d 663, quoting *Brown v. United States* (1973), 411 U.S. 223, 231–232, 93 S.Ct. 1565, 36 L.Ed.2d 208, quoting *Bruton v. United States* (1968), 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476. Justice Rehnquist's approach in *McDonough* advances the important purpose of ensuring a fair trial consistent with the interests embodied in the harmless-error rule in Civ.R. 61 and with the judicial preference for preserving the finality of trials. Accordingly, we find *McDonough*'s approach persuasive and endorse its application in conjunction with our decision in *Pearson* when a litigant seeks a new trial on the basis of jurors' alleged failures to disclose material information during voir dire.

*B*

{¶ 31} As noted above, earlier case law from this court is consistent with the approach outlined in *McDonough*. In *Pearson,* 148 Ohio St. 425, 36 O.O. 77, 76 N.E.2d 67, paragraph two of the syllabus, this court held that whether a party is prejudiced by the fact that a juror who sat on the case had failed to disclose material information in response to a question on voir dire is a question for the sound discretion of the trial court, to be reviewed by the appellate court consistent with G.C. 11364, the statutory predecessor to Civ.R. 61's harmless-error rule. In *Pearson,* counsel for the plaintiff in a personal-injury action moved for a new trial based on the failure of no fewer than four jurors to disclose, in response to a question to the array during voir dire, prior accidents involving themselves or their family members.

{¶ 32} The trial court denied the motion, concluding that the plaintiff had not been prejudiced by the jurors' sitting on the case. The trial court also found that the jurors did not deliberately fail to answer the questions, but had difficulty remembering the particulars of the accidents. Id. at 446, 36 O.O. 77, 76 N.E.2d 67. This court held that the record revealed no abuse of discretion by the trial court in making those findings or in rejecting the motion for a new trial. Id. at 449, 36 O.O. 77, 76 N.E.2d 67.

{¶ 33} Our earlier cases of *Petro v. Donner* (1940), 137 Ohio St. 168, 17 O.O. 513, 28 N.E.2d 503, paragraph two of the syllabus, and *Steiner v. Custer* (1940), 137 Ohio St. 448, 451, 19 O.O. 148, 31 N.E.2d 855, also recognize that abuse of

discretion is the standard of review for a trial court's ruling on a motion for a new trial based on alleged failure of a juror to disclose material matters inquired about on voir dire. *Petro* suggested in dicta that the complaining party was prejudiced by an inability to exercise a peremptory challenge against a juror who had intentionally withheld material information about his work for an insurance company. See *Petro,* 137 Ohio St. at 176, 17 O.O. 513, 28 N.E.2d 503. However, *Pearson* confirms that simply alleging possible impairment of a party's right to exercise a peremptory challenge against a juror who fails to disclose information during voir dire is not enough to require a new trial. Instead, *Pearson* clarified that "the real question for a reviewing court is whether substantial justice has been done." 148 Ohio St. at 449, 36 O.O. 77, 76 N.E.2d 67. To resolve that issue, the appellate court must determine whether the trial court's determination was an abuse of discretion.

## C

{¶ 34} The court of appeals correctly noted that whether the trial court's order denying a new trial under Civ.R. 59(A)(2) on the ground of jury misconduct should be reversed is governed by the abuse-of-discretion standard. Cf. *Pearson,* 148 Ohio St. 425, 36 O.O. 77, 76 N.E.2d 67, paragraph two of the syllabus. Dhillon's second proposition of law, which sets forth this standard, appears not to be disputed as a legal principle; rather, the question is whether the appellate court properly applied that standard.

### 1.

{¶ 35} As noted above, the trial court found that "it is not evident that Juror Krusely gave false information to questions put to him, but rather that he did not volunteer all information that he may have [had] if other specific questions were asked." The record supports this determination.

{¶ 36} Grundy's trial counsel asked the entire panel the following question: "How about members of your family? Have you ever taken a member of your family to the Trumbull Memorial Emergency Room?" One juror (not Krusely) answered, "yes." Grundy's lawyer asked that juror, "About that, any experiences that you think will influence your decision making on this case?" Before that juror replied, Grundy's lawyer immediately commented on how emergency rooms have changed over the years and explained the two different divisions within the emergency department and the hospital's practice of subletting its emergency department to an outside group. Another juror made a comment in response to the lawyer's comment about emergency room doctors not being employees of the hospital.

{¶ 37} Grundy's trial counsel then asked several new questions simultaneously and directed those questions to Krusely. The lawyer asked: "Do you believe it is

reasonable to expect that Emergency Professional Services, Inc., if they are going to sublet the emergency room in our community hospital, would hire qualified doctors to handle the emergency room?  You think that is a reasonable expectation?  What do you expect from an emergency room doctor?"  Krusely then answered the questions put directly to him, as follows:

{¶ 38} "I don't like the idea of it being a primary care.  * * * I think the emergency room has an obligation to save your life, to not make it any worse, to not necessarily cure you, but at least to get you on the road to where maybe I need to send you to a professional tomorrow.  I'll make an appointment with a bone specialist or whatever you happen to need."

{¶ 39} Q: "Sort of, what is going on?"

{¶ 40} A: "Yes."

{¶ 41} Q: "And not necessarily cure you, but at least identify what the problem is?"

{¶ 42} A: "Certainly.  I don't think everything can be cured in the emergency room setting."

{¶ 43} Q: "I agree, is that a reasonable expectation?"

{¶ 44} A: "Yes."

{¶ 45} Q: "Anybody else?  Yes, Sir?"

{¶ 46} After this colloquy, Grundy's trial counsel moved on to question another juror.  During this discussion with Juror Krusely, Grundy's trial counsel did not follow up with him specifically on the question about whether he or his family had been treated at Trumbull Memorial Hospital emergency room.

{¶ 47} The trial court's finding that Krusely did not give false information, but only failed to volunteer information, is supported by the record of the voir dire. Under the circumstances of the questioning here, we cannot say that Juror Krusely's failure to raise the topic again when the questioning returned to him amounted to a deliberate failure to disclose material information in response to a question put to him or the panel.

{¶ 48} The trial court also found that "there is no evidence in the record that Juror Krusely actually had a remembrance of the subject events at the time he was questioned during voir dire."  The record also supports that determination. At the hearing on the motion for a new trial, Krusely testified that the incident in which he took his child to Trumbull Memorial Hospital emergency room occurred four years before the trial in this case.  When asked if he had "at any time [during voir dire] knowingly or deliberately attempt[ed] to conceal information" from the lawyers, Krusely answered: "Absolutely not."  Krusely also testified (in response to the judge's question at the hearing):

{¶ 49} "Do I remember everything I have ever done? No, Sir. But I certainly, certainly did not try to hide anything, and I certainly answered everything honestly.

{¶ 50} "Quite frankly, I believe in two and a half weeks of hearing about this case and this 22 year old girl, made me remember about my son who happens to be 22 years old. Had I been reminded of it earlier, I would have certainly relayed that incident."

{¶ 51} The trial court's assessment of this evidence was not an abuse of discretion.

{¶ 52} Additionally, Grundy's trial counsel later during voir dire asked Krusely—twice—whether he could be fair in deciding the case. Both times, Krusely responded that he could. Such responses would cut against any basis for a for-cause challenge to juror Krusely. See *State v. Jones* (2001), 91 Ohio St.3d 335, 338, 744 N.E.2d 1163 ("The trial court was entitled to accept McCollum's assurances that he would be fair and impartial and that he would decide the case on the basis of the evidence"). As long as a trial court is satisfied that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause. See *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301; *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, at ¶ 100.

{¶ 53} The trial court's opinion also suggested that if any party had had reason to excuse Krusely had he disclosed his son's experience at Trumbull Memorial emergency room, it would have been the defendants, not the plaintiff. Thus, the trial court implicitly rejected any argument that Grundy had had a valid challenge of juror Krusely for cause. Such a determination, under the circumstances of this case, was not an abuse of discretion. *Hall v. Banc One Mgt. Corp.*, 114 Ohio St.3d 484, 2007-Ohio-4640, 873 N.E.2d 290, ¶ 38 (for-cause challenge of a potential juror for bias pursuant to R.C. 2313.42(J) allows the exercise of discretion by the trial court). Thus, Grundy failed to show that his right to a fair trial was prejudiced by Juror Krusely's sitting in the trial of the case despite his failure to disclose his child's prior experience at Trumbull Memorial Hospital.

{¶ 54} For these reasons, Grundy has failed to show that the trial court abused its discretion in denying him a new trial based on alleged juror misconduct. The court of appeals erred in failing to accord due weight to the trial court's findings on this issue and in reversing the trial court's decision rejecting the new-trial motion, which was not an abuse of discretion.

2.

{¶ 55} With regard to Krusely's testimony at the hearing on the motion for a new trial, the parties do not dispute that Evid.R. 606(B) does not prohibit

Krusely's testimony on the limited issue of whether he recalled, during voir dire, his son's experience with Trumbull Hospital emergency room. Evid.R. 606(B) provides:

{¶ 56} "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes."

{¶ 57} Evid.R. 606(B) "is intended to preserve the integrity of the jury process and the privacy of deliberations, to protect the finality of the verdict, and to insulate jurors from harassment by dissatisfied or defeated parties* * *." *State v. Reiner* (2000), 89 Ohio St.3d 342, 350, 731 N.E.2d 662, reversed on other grounds, *Ohio v. Reiner* (2001), 532 U.S. 17, 121 S.Ct. 1252, 149 L.Ed.2d 158. This court has held that a jury's verdict may not be impeached by the evidence of a member of the jury unless competent evidence from some other source is first presented as a foundation for it. *State v. Adams* (1943), 141 Ohio St. 423, 427, 25 O.O. 570, 48 N.E.2d 861. Additionally, the information alleging juror misconduct must be from a source that possesses firsthand knowledge of the improper conduct. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 75, 564 N.E.2d 54. As this court noted in *Reiner*, the prohibition in Evid.R. 606(B) is not limited to examining improper conduct or communications during deliberations, but also prohibits "inquiry into improper conduct that occurred throughout the trial, during the presentation of evidence, or among jurors during the course of the trial that may influence a juror's mind, emotions, or mental processes during deliberations." *Reiner*, 89 Ohio St.3d at 351, 731 N.E.2d 662.

{¶ 58} Juror Krusely's testimony about his view of what Sumner should have done after her initial visit to Trumbull's emergency room (i.e., go to another hospital) and Juror Noel's testimony regarding Krusely's alleged opinion of Dr. Dhillon (i.e., that Krusely would not let him treat a paper cut), as well as Krusely's opinion of Trumbull's standard of care (i.e., that it was low), concerned matters on which Evid.R. 606(B) forbids juror testimony when introduced to

question the validity of a verdict, i.e., Juror Krusely's views of the evidence presented in this case. Cf. Evid.R. 606(B) ("Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith").

{¶ 59} The trial court found that during voir dire in this case, Krusely did not remember his son's experience at Trumbull Hospital. Thus, the only question relevant here is whether Krusely was properly permitted to testify about whether he remembered during voir dire the incident involving his son. Some courts have held that testimony regarding a juror's failure to answer questions honestly during voir dire is not prohibited by Evid.R. 606(B). See, e.g., *Farley v. Mayfield* (June 30, 1986), Franklin App. No. 86AP–19, 1986 WL 7491; *Hard v. Burlington N. RR.* (C.A.9, 1987), 812 F.2d 482; *Alejo Jimenez v. Heyliger* (D.P.R., 1992), 792 F.Supp. 910; *Manrique v. State* (Alaska App.2008), 177 P.3d 1188, 1191. Under this view, Krusely was properly permitted to testify about whether he remembered during voir dire the incident involving his son. But see *United States v. Benally* (C.A.10, 2008), 546 F.3d 1230 (Fed.R.Evid. 606(b) prohibits juror testimony about matters during deliberations that show that a juror lied during voir dire).

{¶ 60} In any case, the parties do not dispute that Krusely's testimony about his failure to disclose during voir dire his son's experience at the Trumbull Hospital emergency room was not precluded by the rule. Accordingly, as there is no controversy before us on this issue, we need not decide how Evid.R. 606(B) might apply to that testimony.

## III

{¶ 61} For all of the reasons discussed in this opinion, we hold that to obtain a new trial in a case in which a juror has not disclosed information during voir dire, the moving party must first demonstrate that a juror failed to answer honestly a material question on voir dire and that the moving party was prejudiced by the presence on the trial jury of a juror who failed to disclose material information. To demonstrate prejudice, the moving party must show that an accurate response from the juror would have provided a valid basis for a for-cause challenge. We also hold that in determining whether a juror failed to answer honestly a material question on voir dire and whether that nondisclosure provided a basis for a for-cause challenge, an appellate court may not substitute its judgment for the trial court's judgment unless it appears that the trial court's attitude was unreasonable, arbitrary, or unconscionable. For the reasons stated in this opinion, the

trial court did not abuse its discretion in denying Grundy's motion for a new trial on the basis of alleged juror misconduct.

{¶ 62} Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

LANZINGER, J., concurs in judgment only.

———————

Martin F. White Co., L.P.A., James J. Crisan, and Martin F. White, for appellee.

Pfau, Pfau & Marando and William E. Pfau III, for appellants.