Pfeifer, J.,
dissenting.
{¶ 97} Most farms look pretty good when viewed from afar. The rows of crops appear evenly spaced and the barn well painted. The view from the ground is very different. Due to weather, the crops may be uneven or sparse and the paint on the barn may be peeling. But, even with these imperfections, the farms are productive. Unfortunately, the majority opinion in this case gets so caught up in the imperfect ground view that it overlooks the larger realities. Viewed from the proper perspective, the verdict in this case is both justified and reasonable. Moreover, by focusing on the motes, the majority opinion has attacked the trial court and the court of appeals in a way that is unwarranted and just plain demeaning.
*194 {¶ 98} This case involves a civil trial where the burden of persuasion is on the plaintiffs to establish their case by a preponderance of the evidence. Merrick v. Ditzler, 91 Ohio St. 256, 260, 110 N.E. 493 (1915). In a criminal trial, a defendant is “presumed innocent until proven guilty beyond a reasonable doubt.” R.C. 2901.05(A). The criminal standard is tougher because “the state has a more jealous concern for the lives and liberties of its inhabitants than it can possibly entertain for property rights.” Merrick at 261. The majority opinion turns these standards on their heads by essentially determining that any error in a civil trial justifies sending the case back for a new trial. That is not the standard in criminal trials, even trials where a person’s life is at stake, and it certainly should not be the standard in civil trials.
{¶ 99} In criminal cases, we routinely overlook errors that are not outcome-determinative, even errors that are constitutional in nature. Grundy v. Dhillon, 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153, ¶ 27-30; State v. Jones, 90 Ohio St.3d 403, 422, 739 N.E.2d 300 (2000). Civ.R. 61 embodies this concept in the civil context. It states that reviewing courts must disregard errors and defects that do “not affect the substantial rights of the parties.” It also provides that verdicts will not be vacated unless refusal to vacate would be “inconsistent with substantial justice.” This rule and our consistent practice through the years reflect the reality that there is “ ‘no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.’ ” (Ellipsis sic.) State v. Hill, 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996), quoting United States v. Hasting, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).
{¶ 100} A structural error is one that affects “ ‘ “the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.” ’ ” State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 17, quoting State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9, quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). See also Beard v. Meridia Huron Hosp., 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 35 (“An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice”).
{¶ 101} Against this backdrop, it is time to examine the errors that the majority opinion concludes justify setting aside the jury verdict in this case.

Medical Illustration from a Learned Treatise

{¶ 102} First, it is obvious that the majority opinion correctly concludes that the trial court erred when it granted the Moretzes’ motion to admit as an exhibit a medical illustration from a learned treatise. The question thus becomes whether the introduction of the illustration as an exhibit affected the framework of the trial. Clearly, it did not.
*195 {¶ 103} The majority opinion places great weight on this illustration, imbuing it with the power to contort the jury’s deliberations. But there is no reason to think that that is what happened. The trial lasted four days and produced nearly 700 pages of transcript. The illustration is discussed on fewer than ten pages of the transcript. It was offered as a representative of the type of cyst that Moretz had, and it was authenticated by Dr. Mark R. McLaughlin, one of the defense’s expert witnesses. Its use during the trial was fine; only its introduction as an exhibit was improper.
{¶ 104} Dr. McLaughlin, when discussing the illustration, stated that nerves can occur on an anterior sacral meningocele and that “a neurenteric cyst can look very similar to” an anterior sacral meningocele. Dr. McLaughlin stated that nerve roots stretched over the sac “can occur,” indicating the possibility of nerves, not the reality or the certainty. Similarly, in closing argument, the Moretzes’ counsel stated that the illustration depicts a cyst that “potentially had nerve roots stretched over it.” Defense counsel chose not to mention the illustration in closing, perhaps not wanting to draw the jury’s attention to it. But the Moretzes’ counsel already had referred to it, and if defense counsel thought that the illustration was particularly damaging, he could have explained to the jury why it was misleading or misrepresentative.
{¶ 105} The majority opinion attaches significance to the Moretzes’ counsel referring to the illustration and stating, “That has nerves in it.” But the defense’s own expert witness had testified, when discussing the illustration, that nerves like that “can occur.” Furthermore, the jury knew that the illustration was just that — “an illustration” of a representative cyst. They knew that it was not intended to depict the cyst in Larry Moretz’s body.
{¶ 106} There is no reason to believe that admitting the illustration as an exhibit led the jury astray. There was ample evidence presented throughout the trial that Dr. Muakkassa did not conduct himself during the surgery as Larry Moretz thought he would, did not conduct himself as Dr. Williams thought he would, did not conduct himself as Dr. McLaughlin would have conducted himself, and did not conduct himself as Dr. Dennis thought he should. That is the evidence that led to the jury verdict, not the incidental, though plainly improper, introduction of a properly authenticated illustration as an exhibit.
{¶ 107} Larry Moretz thought that Dr. Muakkassa would be the co-surgeon, not just an interested academic observer. Dr. Williams also thought that Dr. Muakkassa would be the co-surgeon, and he testified that he asked Dr. Muakkassa to scrub in, which Dr. Muakkassa did not do. Dr. McLaughlin testified that he would have used magnification to search for nerves, that he would have used stimulation to check for nerves, and that he would have scrubbed in. Dr. Muakkassa did none of those things. As the majority opinion states:
*196 Dr. Dennis testified that Dr. Muakkassa breached the standard of care in four ways: (1) he failed to scrub in to the surgery and operate himself, (2) he failed to use magnification or recommend that Dr. Williams use it, (3) he failed to use stimulation or recommend that Dr. Williams use it, and (4) he failed to recommend a posterior approach.
Majority opinion at ¶ 81.
{¶ 108} Against this evidence, the majority opinion concludes that the admission of the illustration as an exhibit was so overwhelmingly prejudicial that it “deprived Dr. Muakkassa of his right to a fair jury deliberation.” That is nonsense. To reiterate: use of the illustration did not violate the rules of evidence. The illustration itself was relevant and properly authenticated. Only the admission of the illustration as an exhibit was against the rules.
{¶ 109} And the jury had ample other evidence from which to reach a verdict of negligence. The defense’s expert witness testified that the best way to remove the cyst was with posterior surgery. Dr. Muakkassa was asked whether he made any attempt to protect the nervous system. He replied that he had not. He also testified that he didn’t look to see whether there was a nerve on the cyst and that he didn’t look for a nerve because he didn’t expect to see one. Against all of this, the majority opinion suggests that the admission of a properly authenticated illustration as an exhibit deprived Dr. Muakkassa of a fair trial.
{¶ 110} That brings us to the standard of review on this issue, which is abuse of discretion. The majority opinion concludes that the trial court abused its discretion in allowing the illustration to be admitted as an exhibit. Accordingly, a majority of this court believes that the trial court acted unreasonably, arbitrarily, or unconscionably, though it does not tell us which. I conclude that admitting the illustration as an exhibit was not within the discretion of the court, but rather was error, mere error, and that given the abundance of other evidence presented in support of the verdict, the error was harmless.

Proposed Interrogatory

{¶ 111} Do we not ask enough of our juries in complicated medical-malpractice cases? They are already asked to learn obscure terminology and complex concepts that are not part of their day-to-day world. They are asked to make fine factual distinctions between reasonable options that have been explained, often inconsistently, by counsel and by witnesses. They are asked to absorb lengthy testimony, some of which they are supposed to assume they didn’t hear, such as after an objection is sustained. They are asked to live for a day, a week, or a month in an unfamiliar legal environment. We should all be very thankful *197 for their efforts and impressed with the results they produce. But now, a majority of this court would have the juries of this state become essay writers. There is no other way to describe requiring juries to answer open-ended interrogatories. And there is no better way to induce innocent mistakes on the part of laypeople.
{¶ 112} The better practice in this case would have been for the defense to submit a yes/no question as to each issue that the plaintiffs contend was negligence. That tactic would have adequately tested the verdict without requiring the jury to write an essay on a topic with which it is generally unfamiliar. Open-ended prose answers from juries could be a gold mine for disgruntled defendants. Juries would likely make technical misstatements that could lead to reversals, even when the jury is justifiably convinced that negligence occurred.
{¶ 113} In this case, the defense submitted an open-ended interrogatory. The trial court concluded that the plaintiffs’ case essentially boiled down to one issue: whether Dr. Muakkassa was negligent in failing to scrub in. It is certainly arguable that there was more than one respect in which Dr. Muakkassa could have been deemed negligent. We do not know the logic that animated the trial court’s decision not to allow the proposed interrogatory, other than what was stated. But I believe that the trial court wished to avoid requiring the jury to expound in writing on a complex issue of medical care on which even the experts differed. Unfortunately, a majority of this court appears to think that that is a grand idea.
{¶ 114} The court of appeals agreed with the trial court that the basic theory of the plaintiffs’ case was that Dr. Muakkassa was negligent in failing to scrub in. 2012-Ohio-1177, 2012 WL 982996, ¶ 16. I’m not sure I agree with that conclusion, but it was not unreasonable. Even if we disagree with that characterization of the case, even if we would have decided differently, that does not mean that the decision should be reversed. It can only be reversed if the trial court acted unreasonably, arbitrarily, or unconscionably. It did not.
{¶ 115} One more aspect of this issue is interesting. The defense did not submit an alternative interrogatory, though they had ample opportunity. They should have submitted several: one yes/no question as to each aspect of the plaintiffs’ case that in defense counsel’s view constituted an allegation of negligence. Such straightforward interrogatories would have been relatively simple for the jury to answer without delving into complicated language and issues, would have properly tested the jury’s verdict, and could not have been reasonably rejected by the trial court.
{¶ 116} A trial court’s decision to submit interrogatories is reviewed under an abuse-of-discretion standard. Freeman v. Norfolk, 69 Ohio St.3d 611, 614, 635 N.E.2d 310 (1994). I conclude that the trial court did not act unreasonably, *198 arbitrarily, or unconscionably in rejecting the proposed interrogatory. I further conclude that the defense waived its right to complain when it failed to submit alternative interrogatories.
{¶ 117} By allowing open-ended questions to be asked of juries, Civ.R. 49(B) causes more harm than good. It allows defendants to attempt to confuse or distract juries, often on minor points that have little or no bearing on the outcome and the issues they are to decide. The only thing saving the civil-justice system from daily train wrecks caused by a literal reading of Civ.R. 49(B) is the common sense and wisdom of trial judges who reject interrogatories that are designed to confuse or distract. This court should have the sense to affirm trial courts when they so act, especially when, as here, the defense had the alternative of asking straightforward yes/no questions that were unlikely to confuse or distract the jury.

Damages Evidence

{¶ 118} The trial court did not allow Dr. Muakkassa to introduce evidence to show that the value of the medical services at issue in this case was equal to the amount paid after write-offs were taken. The court concluded that evidence of write-offs could be introduced only through expert testimony. The majority opinion deems this approach an abuse of discretion, even though it calls the question an “open” one. Majority opinion at ¶ 92.
{¶ 119} The Moretzes introduced evidence of medical expenses by supplying copies of medical bills to opposing counsel and to the court. Dr. Dennis also testified as to the necessity and reasonableness of the treatment and medical bills. Accordingly, these medical bills are presumed to be reasonable. R.C. 2317.421. When Dr. Muakkassa attempted to present evidence of write-offs, the trial court refused because he did not have expert testimony in support of his evidence. The court stated that “assuming you have expert testimony available to support the reasonableness of that, then you can present the evidence.” This approach by the trial court does not strike me as unreasonable, arbitrary, or unconscionable.
{¶ 120} During the trial, the defense had ample opportunity to introduce evidence about the reasonableness of the write-offs. But when Joanne Smith, a medical-billing specialist, was on the stand, the defense did not ask a single question about the medical bills in question. Instead, he focused his questions on the bill that Dr. Muakkassa presented for his services. The defense did not question Dr. Dennis or Dr. McLaughlin about the write-offs. Given that the defense did not proffer evidence of the reasonableness of the write-offs at trial, I conclude that the defense should be precluded from contesting that issue on appeal.
*199 Mark D. Amaddio Co., L.P.A., and Mark D. Amaddio; and David M. Todaro Co., L.P.A., and David M. Todaro, for appellees.
Roetzel & Andress, L.P.A., Douglas G. Leak, and Stacy Delgros, for appellant.
{¶ 121} The majority opinion concludes that the trial court abused its discretion in refusing to allow evidence of write-offs. Even if that were true, this error on the part of the trial court does not necessitate a new trial because it can be easily corrected with a remittitur.

Conclusion

{¶ 122} Larry Moretz has a permanent loss of bowel, bladder, and sexual function. His condition is inarguably the result of the surgery he underwent. Whether Dr. Muakkassa was negligent was an issue for the jury to determine. It had ample evidence before it that he had not been negligent and ample evidence that he had been negligent. It concluded that he had been negligent.
{¶ 123} The last thing defense counsel told the jury was “I trust this system. And I will accept your verdict, as will my client * * After deciding that the best way to treat his patient was a drive-by surgery and after vowing to abide by the jury verdict, Dr. Muakkassa now declares that justice demands that he receive a new trial, a new opportunity to convince a fresh jury that the horrendous outcome in this case should be laid at the doorstep of his colleague, the general surgeon to whom he referred Moretz. And this court is sanctioning it, transmogrifying a couple of minor discretionary decisions that did not affect the outcome of the trial into a miscarriage of justice.
{¶ 124} The jury verdict in this case was proper. The finding of negligence and the amount of damages do not reflect passion and prejudice. Nothing in the jury verdict suggests that Dr. Muakkassa did not receive substantial justice. In short, the jury got it right, and its verdict is not “inconsistent with substantial justice” within the meaning of Civ.R. 61. The trial court’s rulings were appropriate, any error was harmless under the circumstances, and the court of appeals should be affirmed, not chastised.
{¶ 125} We have stated many times that criminal defendants are entitled to a fair trial, not a perfect trial. A fair reading of the majority opinion leaves one with the unmistakable impression that from this day forward a doctor in a medical-malpractice case is entitled to a perfect trial.
{¶ 126} I dissent.
O’Neill, J., concurs in the foregoing opinion.
*200 Bricker & Eckler L.L.P., Anne Marie Sferra, and Keesha Warmsby, urging reversal for amici curiae American Insurance Association, Ohio Alliance for Civil Justice, Ohio Hospital Association, Ohio Osteopathic Association, and Ohio State Medical Association.
Dinkier Pregon, L.L.C., Jamey T. Pregon, and Lynnette Dinkier, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.
Vorys, Sater, Seymour & Pease, L.L.P., Thomas E. Szykowny, and Michael Thomas, urging reversal for amici curiae Ohio Insurance Institute and Property and Casualty Insurance Association of America.
Traska Law Firm, L.L.C., and Peter D. Traska; and Frank A. Ray Co., L.P.A., and Frank A. Ray, urging affirmance for amicus curiae Ohio Association for Justice.
Rhonda Davis & Assoc., L.L.C., and Rhonda Gail Davis; Jacquenette S. Corgan; Susan J. Lax Law Office and Susan Lax; and Bartek Law Office and Natalie Niese, urging affirmance for amicus curiae Summit County Association for Justice.