[Cite as *State v. Allen*, 2013-Ohio-434.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

STATE OF OHIO,                          :          **O P I N I O N**

        Plaintiff-Appellee,         :

        - vs -                          :          **CASE NO. 2011-L-157**

BRIAN C. ALLEN, SR.,                    :

        Defendant-Appellant.        :

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 11 CR 000108.

Judgment:  Reversed and remanded.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel and Karen L. Kowall,* Assistant Prosecutors, 105 Main Street, P.O. Box 490, Painesville, OH  44077 (For Plaintiff-Appellee).

*Jay F. Crook*, Shryock, Crook & Associates, LLP, 30601 Euclid Avenue, Wickliffe, Oh 44092 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}    Appellant, Brian C. Allen, Jr., seeks reversal of his conviction on the grounds that he was denied his Sixth Amendment right to effective assistance of trial counsel.  Specifically, he submits that the outcome of his trial would have been different if his trial counsel had filed a motion to suppress the evidence used to obtain his conviction.

{¶2}    Beginning in late August 2010, a series of burglaries occurred in various

communities throughout the western section of Lake County and the eastern section of Cuyahoga County. Many of the burglaries had similar characteristics, i.e., the break-ins took place in residential areas on weekdays when the houses were vacant because the residents were at work. As a result of the similarities, the police departments of the various communities shared information regarding the crimes.

{¶3} On September 30, 2010, two of these serial burglaries occurred in the City of Lyndhurst, located within Cuyahoga County. During their subsequent investigation, officers with the Lyndhurst police spoke to a local resident who stated that he had seen an unfamiliar male walking through the yard of one of the burglarized homes. According to the resident, the unfamiliar male walked around the exterior of the home before backing his car into the driveway. The local resident also provided the officers with the license plate of the car and a general description of both the car and the male suspect.

{¶4} Based upon the information provided, the Lyndhurst police determined that the vehicle seen in the driveway of the burglarized home was registered in the name of appellant's wife. Upon also learning that appellant and his wife resided in an apartment complex in Lake County, the Lyndhurst police dispatched two officers to the complex to conduct surveillance and confirm that the disputed car was in the parking lot. Once the car was located at the complex, the Lyndhurst police placed a GPS tracking device on the vehicle.

{¶5} Although the Lyndhurst officers consulted with a local prosecutor prior to making this decision, they did not obtain a search warrant. After using a strong magnet to attach the GPS device to the bottom of the car's frame, the Lyndhurst officers could track every movement of the car without the need for visual surveillance. The GPS

2

device was so precise that the officers could discern the exact driveway in which the car was located on a given street, and how long the car remained in the driveway.

{¶6} The Lyndhurst police used the GPS device to track the movements of the car for two days. On both days, the vehicle travelled to the City of Cleveland early in the morning, and then came back to the western section of Lake County within two hours, meandering through various residential communities. Depending upon the specific area the car was located at a given time, the Lyndhurst police would contact the local police department and request assistance in maintaining visual surveillance of the vehicle. One of the officers contacted through this procedure was Detective Michael Rowe of the Shaker Heights Police Department, who followed the car for a substantial period on each day. During both periods of his surveillance, Detective Rowe was able to get close enough to the car to verify that appellant was the sole occupant.

{¶7} On the second day of the use of the GPS device, the Lyndhurst police were able to give Detective Rowe information enabling him to locate appellant's car, which was parked in a residential area. After appellant returned to his car, Detective Rowe saw appellant move the car to an adjacent street, where he backed into the driveway of a residence. Detective Rowe then circled the neighborhood in his unmarked vehicle in order to avoid detection. Upon returning to the street in question, Detective Rowe saw appellant backing his car into a second driveway.

{¶8} After appellant left the second driveway, other police officers followed him to the apartment complex where he lived. During this period of surveillance, the officers received confirmation that two break-ins had occurred on the street where Detective Rowe had seen appellant pulling into the driveways. As a result, appellant was placed

3

under arrest when he exited his vehicle at the complex.

{¶9} In looking through the windows of appellant's car, the officers were able to see a number of items, including a television and some chairs. Based upon this, search warrants were obtained for both the car and appellant's apartment. Inside the vehicle, the officers found various objects that had been taken from the two homes burglarized that morning. In the apartment, stolen items were found from other burglaries in the preceding two months.

{¶10} In early March 2011, the grand jury returned a ten-count indictment against appellant, including four charges of burglary, three charges of receiving stolen property, two charges of engaging in a pattern of corrupt activity, and one charge of having a weapon while under a disability. Appellant's trial counsel filed multiple pre-trial motions in the case. However, she did not file a motion to suppress the evidence obtained from using the GPS tracking device. Accordingly, many of the stolen items found in the car and apartment were introduced into evidence at appellant's trial in August 2011.

{¶11} At the conclusion of that trial, the jury found appellant not guilty on all four counts of burglary and one count of engaging in a pattern of corrupt activity. As to the remaining five counts, including the three charges of receiving stolen property, he was found guilty. Upon conducting a sentencing hearing, the trial court ordered appellant to serve an aggregate term of thirteen years on the five counts, and an additional three-year term for having violated the requirements of his post-release control stemming from an earlier conviction.

{¶12} Appellant has raised one assignment of error for review:

4

{¶13} "Appellant was prejudiced by ineffective assistance of counsel in that trial counsel failed to file a Motion to Suppress regarding evidence obtained directly and indirectly through the use of a global positioning system ('GPS') tracker applied to a vehicle without a warrant."

{¶14} The basic standard for reviewing an assertion of ineffective assistance of trial counsel is well-settled under both federal and state case law:

{¶15} "In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668 * * *. See, *In re Roque*, 11th Dist. No. 2005-T-0138, 2006 Ohio 7007, at ¶11. * * * First, it must be determined that counsel's performance fell below an objective standard of reasonableness. Id. Second, it must be shown that prejudice resulted. Id. 'Prejudice exists when "the result of the trial would have been different" but for counsel's ineffectiveness.' Id." *State v. Woodard*, 11th Dist. No. 2009-A-0047, 2010-Ohio-2949, ¶11.

{¶16} In applying the foregoing standard, a "reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation. *Strickland*, [466 U.S. at 689.] An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995 Ohio 171, * * *." *State v. DelMonico*, 11th Dist. No. 2003-A-0022, 2005-Ohio-2902, ¶13.

{¶17} When the ineffective assistance claim is predicated upon the failure to submit a motion to suppress particular evidence, "'an appellant must point to evidence in the record showing there was a reasonable probability the result of [the] trial would

5

have differed if the motion had been filed or pursued.'" *Woodard* at ¶14, quoting *State v. Gaines*, 11th Dist. Nos. 2006-L-059 and 2006-L-060, 2007-Ohio-1375, ¶17. "Hence, to establish prejudice, an appellant must prove more than a mere *possibility* that the motion could have been granted; rather, he or she must show a *reasonable probability* that, but for the omission, the result of the proceedings would have been different." *DelMonico* at ¶20.

{¶18} Though a motion to suppress was not filed in this case, substantial trial testimony was given regarding the use of the GPS tracking device on appellant's car. Specifically, a detective with the Lyndhurst Police Department testified that the tracking device was attached to the subject car and as to how the information obtained was used. Further testimony established that when Detective Michael Rowe of the Shaker Heights Police Department was following appellant's car, the tracking device was used to give the detective the precise location of the car whenever he would lose sight of it. Additionally, there is no dispute that no search warrant was obtained prior to using the tracking device.

{¶19} Given that there is relevant evidence for consideration, the issue is whether that evidence warranted the filing of a motion to suppress the following items: (1) all items obtained by the police through the search of the apartment and the car; and (2) information obtained from the tracking device. In arguing that he was denied effective assistance of trial counsel, appellant asserts that the status of the pertinent case law as of March 1, 2011, the date on which the underlying criminal case was commenced, justified the submission of such a motion.

{¶20} A review of applicable Ohio case law indicates that, prior to March 2011,

6

only one Ohio appellate court had addressed the issue of whether the attachment of a GPS device to a suspect's vehicle constituted a search for which a warrant was needed under the Fourth Amendment. *See State v. Johnson*, 190 Ohio App.3d 750, 2010-Ohio-5808 (12th Dist.), in which it was held that no "search" had occurred through the use of the GPS device on a car. A review of federal case law demonstrates that circuit courts of appeals had considered this issue only slightly more often. As appellant aptly notes in his brief, one federal circuit court had concluded as of March 2011 that the use of a GPS device to track a suspect's car constitutes a "search" for purposes of the Fourth Amendment. *United States v. Maynard*, 615 F.3d 544, 567 (D.C. Cir.2010). However, other federal circuit courts reached the opposite conclusion; i.e., that the use of a GPS device does not result in a "search" of the vehicle. *See, e.g., United States v. Marquez*, 605 F.3d 604, 609 (8th Cir.2010); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1214 (9th Cir.2010).

{¶21} Taken as a whole, of the various appellate courts that considered the "GPS" issue prior to March 2010, a majority held that it was unnecessary for the police officers to obtain a search warrant prior to using a GPS because use of a tracking device does not constitute a search. However, the issue had not been the subject of extensive litigation, especially in the state of Ohio. Furthermore, there was authority favorable to appellant on the issue.

{¶22} Moreover, at the outset of the underlying case, neither this court, the Supreme Court of Ohio, nor the United States Supreme Court had expressly addressed this issue. To this extent, there was no binding precedent requiring the denial of a motion to suppress at the trial level. Furthermore, the extent of the non-binding

7

precedent was not so overwhelming that the filing of a motion to suppress would have been futile. Last, there was no strategic basis for not filing a motion to suppress.

{¶23} As of March 2011, the basic question of whether the use of a GPS tracking device constitutes a "search" was not a settled issue. Moreover, there was some support for the proposition that the use of a GPS constitutes a search which could not be executed without a warrant. Accordingly, trial counsel had an obligation to raise the GPS issue in a motion to suppress all evidentiary items obtained by the police officers. For this reason, the performance of appellant's trial counsel fell below an objective standard of reasonableness.

{¶24} Next, this court must consider the question of whether there was a reasonable probability that the final outcome of appellant's case would have been different if the motion to suppress had been filed. First, even though no definitive answer to the "GPS" issue existed while appellant's case was before the trial court, the issue was pending before the United States Supreme Court during that same general time frame. Five months after the conclusion of appellant's trial, the Supreme Court rendered a final decision on the matter. In *United States v. Jones*, 132 S.Ct. 945 (2012), the Court held that a GPS tracking device could not be attached to a suspect's motor vehicle without a warrant because the use of the device results in a search under the Fourth Amendment.

{¶25} If a motion to suppress had been filed and then denied by the trial court, trial counsel would have had a further obligation to pursue a direct appeal of the matter to this court. In turn, if the trial court had predicated its denial on the basis that a search had not taken place and a warrant was unnecessary, the *Jones* holding would clearly

dictate a reversal of appellant's conviction.

{¶26} In its brief before this court, the state does not dispute the applicability of the *Jones* decision to this case. Nevertheless, the state argues that the failure of the Lyndhurst police to obtain a search warrant would not have warranted the exclusion of all evidence obtained through the use of the GPS device. Specifically, the state contends that two exceptions to the exclusionary rule justified the behavior of the police officers in this instance. First, the state maintains that the officers acted in good faith in concluding that there was no need to obtain a warrant prior to attaching the GPS device to appellant's car.

{¶27} Under well-established precedent, the exclusionary rule is not intended to apply in every instance in which the Fourth Amendment has been violated:

{¶28} "The exclusionary rule is not a personal right or a means to redress constitutional injury; rather, it is used to deter future violations. *Davis v. United States*, 131 S.Ct. 2419, * * * (2011); *Herring [v. United States*, 555 U.S. 135, 141 (2009)]. Deterrence alone is insufficient to justify the exclusionary rule, because 'the benefits of deterrence must outweigh the costs [of excluded evidence],' such as 'letting guilty and possibly dangerous defendants go free.' *Herring*, 555 U.S. at 141; *see also Davis*, 131 S.Ct. at 2426. In keeping with this principle, the exclusionary rule generally applies where 'police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights,' but not 'when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful.' *Davis*, 131 S.Ct. at 2427." *United States v. Ford*, Case No. 1:11-CR-42, 2012 U.S. Dist. LEXIS 155206, *26 (E.D. Tenn. 2012).

{¶29} As a general proposition, the good-faith exception to the exclusionary rule

can only be invoked when the acts of the police officers are supported by existing legal authority. *United States v. Lee*, 862 F.Supp.2d 560, 568 (E.D. Ky. 2012). Hence, the exception is applicable when the officers were acting pursuant to a warrant which was later found to be invalid, a statute which was later declared unconstitutional, databases which contained erroneous information, and binding appellate legal precedent that was subsequently overturned. *Id.*

{¶30} As part of the aftermath of the United States Supreme Court's decision in *Jones* regarding the validity of the use of a GPS tracking device, the federal government attempted to argue in certain cases that the officers' use of the device had been based upon the appellate precedent of the Eighth and Ninth Circuit Courts, in which it was held that no actual "search" had occurred. In *Lee*, the district court concluded that the police officers within its jurisdiction could not predicate their "good faith" argument upon the case law of other circuit courts when the governing circuit court for their state or area of the country had never addressed the issue. *Id.* at 570. Under this logic, the overturned appellate precedent must have been binding within the jurisdiction before it can form the basis of the good-faith exception.

{¶31} In Ohio, the foregoing logic was followed by the Second Appellate District in *State v. Henry*, 2d Dist. No. 25007, 2012-Ohio-4748. That is, in rejecting the state's contention that the warrantless use of a GPS tracking device could be justified under the prior federal precedent, the *Henry* court held that only binding appellate precedent can be cited to support a good-faith argument. *Id.* at ¶18.

{¶32} In our case, this court had never addressed the "GPS" issue prior to the release of the United States Supreme Court's decision in *Jones.* The same is true of

the Ohio Supreme Court and the Sixth Circuit Court of Appeals. Thus, there was no binding precedent in this jurisdiction concluding that the employment of a GPS tracking device does not constitute a "search," making a warrant unnecessary. Accordingly, the good-faith exception is not available.

{¶33} In arguing that the failure to submit a motion to suppress did not prejudice appellant, the state further asserts that the evidence seized through the use of the GPS device still would have been admissible because its discovery by the police officers was inevitable as part of their investigation. In support of this separate point, the state notes that the trial testimony of the detectives demonstrated that, even before the GPS device was installed, appellant was a primary suspect for the series of burglaries.

{¶34} The state's "inevitable discovery" argument is clearly predicated upon the speculation that, if the GPS device were not used, the officers would have employed visual surveillance to track appellant's movements in the car and would have caught him committing the burglaries. However, there is no testimony to support that this indeed happened. Instead, the trial testimony available for review indicates that, absent the GPS, the evidence would not have been obtained. Stated otherwise, that the police could have, but did not, use alternative means does not constitute "inevitable discovery."

{¶35} As a final point, the state argues that appellant's conviction should not be reversed because the conduct of the police officers did not rise to the level of a "plain error." However, in asserting this point, the state merely restates the arguments it asserted in support of its "good-faith" and "inevitable discovery" contentions. In light of our holding that neither of those two exceptions to the exclusionary rule could be

11

invoked under the specific facts of this case, this court also rejects the state's "plain error" argument.

{¶36} In light of the foregoing, appellant's sole assignment has merit. Therefore, appellant's convictions are reversed and this matter is remanded to the trial court for further proceedings. On remand, trial counsel shall file a motion to suppress, and the proceedings shall commence from that point.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.