[Cite as *State v. Necessary*, 2013-Ohio-4962.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2013-A-0001** |
| - vs - | : | |
| RICKY NECESSARY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CR 485.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Ravi Suri*, 850 Euclid Avenue, Suite 804, Cleveland, OH 44114 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the final sentencing judgment in a criminal case before the Ashtabula County Court of Common Pleas. Following a jury trial, appellant, Ricky Necessary, was found guilty of grand theft of a motor vehicle under R.C. 2913.02(A)(1). As the primary basis for the appeal, appellant asserts that he was denied a fair trial as a result of juror misconduct during voir dire and final deliberations.

{¶2} Appellant's conviction was predicated upon an alleged incident in which

he and his girlfriend, Marissa Pentek, sold a motor vehicle belonging to another person and kept the proceeds. The vehicle in question was a 1991 Chevrolet pick-up truck that was owned by Brett Kelly, a former high school acquaintance of appellant. One day in late August 2011, Kelly agreed to give appellant and Pentek a ride in his pick-up truck to the Pentek's stepfather's, Rodney Lynch, home. At the time, appellant and Pentek were residing with Lynch.

{¶3} As Kelly was turning into Lynch's driveway, his truck's engine started to sputter and ultimately stopped running. With Lynch's assistance, Kelly determined that the truck's alternator needed to be replaced. Since Kelly did not have sufficient funds to repair his truck immediately, he asked Lynch if he could leave it on Lynch's property for at least a few weeks. Lynch gave him permission to do so.

{¶4} Approximately one month later, when Kelly returned to the Lynch property to replace the alternator, his truck was no longer there. Since Pentek was present when Kelly came to retrieve his vehicle, he asked her if she knew where the truck was. After Pentek was unable to give a satisfactory explanation, Kelly contacted the county sheriff.

{¶5} During the ensuing investigation, Pentek initially told a sheriff deputy that she had decided to sell Kelly's truck without involving appellant. However, Pentek later recanted and informed the deputy that she and appellant had mutually agreed to "scrap" the truck for money. She further indicated that she and appellant contacted a number of "scrap" dealers about the truck, and that appellant ultimately reached an agreement to sell the vehicle to a particular dealer for $200. According to Pentek, she and appellant used the money to pay their bills.

{¶6} The investigating deputy was never able to find the specific "scrap" dealer

2

who purchased Kelly's vehicle. But Pentek was able to provide the telephone number of one dealer whom she had contacted. When interviewed by the deputy, that dealer was able to recall being contacted by both a woman and a man regarding the purchase of a Chevrolet truck. The dealer also remembered that he was on his way to look at the truck when the man telephoned him again and told him not to come because the truck had just been sold.

{¶7} In December 2011, the county grand jury returned a one-count indictment against both appellant and Pentek, charging them with grand theft of a motor vehicle, a fourth-degree felony under R.C. 2913.02(A)(1). Before Pentek's case could be set for trial, she entered into a plea bargain with the state. As one term of the bargain, Pentek agreed to testify against appellant. After appellant was granted two continuances, his trial was held in October 2012. In addition to Pentek, the state presented the testimony of Kelly, Pentek's stepfather, the investigating deputy, and the "scrap" dealer who was contacted about a Chevrolet truck. Appellant rested without submitting any evidence.

{¶8} Once jury deliberations had begun, the trial court received a written note from Juror #10, Robin Zee. In the note, Juror Zee asserted that, during the jury's initial discussion of the case, she had overheard Juror #11, Rebecca Sanders, commenting to three other jurors that she was aware of appellant's prior drug use and criminal history. In response to this note, the trial court separately questioned Juror Zee, Juror Sanders, and one of the jurors to whom Sanders made her alleged comments. This questioning took place in the judge's chambers, with only the prosecutor, defense counsel, and the court reporter present. In light of the questioning, the court assembled all twelve jurors in the courtroom and asked whether any statements have been made during their

3

deliberations concerning a juror's personal knowledge of appellant. None of the twelve jurors gave an affirmative response to this question.

{¶9} Based upon the foregoing proceedings, the trial court concluded that Juror Sanders did not make any specific statements before the other jurors which would have the effect of "contaminating" them. As to Sanders herself, the court held that she was still qualified to sit on the jury because, even though she had knowledge of certain facts pertaining to appellant, she expressly stated that she would predicate her verdict solely upon the evidence presented at trial. Accordingly, the court permitted the jury to resume its deliberations.

{¶10} After the jury returned its guilty verdict on the "grand theft" count, the trial court conducted a separate hearing on sentencing. As part of its consideration of the pertinent sentencing factors, the court found that appellant was highly likely to commit additional offenses in the future because he was addicted to illegal drugs. In support of this finding, the court emphasized that, in July 2012, it had been necessary to continue appellant's scheduled trial because he had appeared in court while under the influence of multiple illegal drugs. As a result, the trial court sentenced appellant to a prison term of 17 months, one month shy of the maximum term for a fourth-degree felony.

{¶11} In appealing his conviction and sentence to this court, appellant has raised three assignments of error for review:

{¶12} "[1.] The trial court erred in failing to grant a new trial when a juror had undisclosed knowledge and made deliberation comments regarding [appellant's] alleged drug use and criminal history.

{¶13} "[2.] Trial counsel's failure to object when the court did not order a mistrial

4

deprived [appellant] of his right to counsel.

{¶14} "[3.] The trial court erred as a matter of law and abused its discretion in giving [appellant] a near maximum sentence due to substance abuse unrelated to the offense."

{¶15} Under his first assignment, appellant contends that the trial court erred in not declaring a mistrial upon learning of the comments Juror Sanders made at the start of the jury deliberations. Specifically, he maintains that Juror Sanders could no longer sit on the jury because: (1) she misled the trial court during voir dire regarding the extent of her "outside" knowledge of his background; and (2) the nature of that knowledge was such that she would have an automatic tendency to be biased against him. Moreover, he argues that other members of the jury were "tarnished" by Sanders' comments because they would conclude that illegal drugs played a role in the commission of the underlying crime.

{¶16} As both sides aptly note, when a criminal defendant alleges that a seated juror failed to state the extent of her knowledge during voir dire, a two-prong standard is employed for determining whether a new trial should have been granted:

{¶17} "To obtain a new trial in a case in which a juror has not disclosed information during voir dire, the moving party must first demonstrate that a juror failed to answer honestly a material question on voir dire and that the moving party was prejudiced by the presence on the trial jury of a juror who failed to disclose material information. To demonstrate prejudice, the moving party must show that an accurate response from the juror would have provided a valid basis for a challenge for cause. * * *. In determining whether a juror failed to answer a material question on voir dire

5

and whether that nondisclosure provided a basis for a for-cause challenge, an appellate court may not substitute its judgment for the trial court's judgment unless it appears that the trial court's attitude was unreasonable, arbitrary, or unconscionable. * * *." *State v. Balka*, 5th Dist. Licking No. 2008 CA 00119, 2009-Ohio-4857, ¶29, citing *Grundy v. Dhillon*, 120 Ohio St.3d 415, 2008-Ohio-6324.

**{¶18}** The Supreme Court of Ohio has paraphrased the foregoing standard in the following manner: "A court may infer bias if it finds *deliberate* concealment; however, if the concealment was unintentional, the appellant must show that the juror was actually biased." (Emphasis sic.) *State v. Williams*, 79 Ohio St.3d 1, 4 (1997), citing *Zerba v. Green*, 49 F.3d 1181, 1184-1186 (C.A.6, 1995).

**{¶19}** Appellant first argues that Juror Sanders deliberately withheld the fact that she was aware of his prior illegal drug use and criminal history. Because Sanders was not one of the original 12 jurors called to be questioned, the trial court addressed her individually when her name was ultimately called. When the trial court asked whether Sanders knew appellant, she indicated that, as a school bus driver, she had previously driven him and his siblings to school. However, she also indicated that she had not seen him since he stopped riding her bus approximately six years ago. In answering the court's general queries, Sanders further stated that she knew appellant's parents well enough to speak to them, but that they were not friends and did not associate with each other.

**{¶20}** Once Juror Sanders fully explained her prior contact with appellant and his parents, the following colloquy occurred:

**{¶21}** "THE COURT: Did you know anything about this case when you came in

6

this morning?

**{¶22}** "MS. SANDERS: No.

**{¶23}** "THE COURT: Have you overheard any conversations in the community, any fellow employees or family members discussing this matter?

**{¶24}** "MS. SANDERS: No, I didn't.

**{¶25}** "THE COURT: Is there any physical reason you can think of as to why you should be excused?

**{¶26}** "MS. SANDERS: No.

**{¶27}** "THE COURT: All right. Can you think of any reason we haven't talked about yet as to why you believe you should be excused?

**{¶28}** "MS. SANDERS: No."

**{¶29}** Citing the trial court's last question, appellant asserts that Juror Sanders had a clear opportunity to inform the court of her "outside" knowledge, and she chose not to do so. However, in claiming that Sanders deliberately concealed her knowledge, appellant assumes that Sanders, despite her status as a layperson, would understand that her knowledge of his background could raise questions as to her qualifications to sit on the jury. In answering the trial court's subsequent questions as to the comments she made at the outset of the jury deliberations, Sanders never indicated that her knowledge was based upon specific conversations with appellant's friends or family members. To this extent, the record supports the conclusion that Sanders' knowledge of appellant's background was limited to general gossip derived from second-hand sources. In light of this, Sanders could have justifiably believed she had no reason which would warrant her exclusion from the jury.

7

{¶30} In the absence of any specific question asking Juror Sanders to disclose her general knowledge regarding appellant's background, the record does not support a finding that she intentionally withheld information from the trial court and trial counsel so that she would be included in the jury. As a result, appellant would have been entitled to a mistrial only if Sanders was actually biased against him or otherwise subject to a for-cause challenge.

{¶31} In her written note to the trial court, Juror Zee only asserted that Sanders had "hinted" to three other jurors that she was aware of appellant's prior drug use and criminal history. In answering the trial court's questions on the matter in chambers, Zee never quoted Sanders as making a specific statement regarding the nature of his drug use or prior crimes. Instead, Zee simply reiterated Sanders' reference to her "outside" knowledge, and only quoted Sanders as saying that she would not allow that knowledge to influence her verdict.

{¶32} As part of Juror Sanders' in-chambers questioning about her comments to the other jurors, she was expressly asked to state the exact nature of her knowledge of appellant's background. As to appellant's prior drug use, Sanders stated that she was told a few years ago that appellant was having "problems" with illegal drugs. The only specific drug she could reference was marijuana. In relation to his past criminal record, Sanders only said that she was aware that appellant had an illegitimate child with the daughter of a local police officer. When appellant's trial counsel noted that having an illegitimate child was not a criminal matter, Sanders acknowledged that she actually was not familiar with appellant's record. Finally, when Sanders was asked about her knowledge of appellant's general character, she only indicated that he had been "good"

8

when she was around him.

{¶33} Emphasizing Sanders' reference to his earlier drug "problems," appellant maintains that the fact that Sanders would make such a reference shows that she was biased against him. In delineating the fourteen basic reasons why a potential jurors can be excused from the jury, Crim.R. 24(C) states that a juror can be challenged for cause on the basis:

{¶34} "(9) That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial."

{¶35} In regard to Juror Sanders, the trial record contains statements from which the trial court could conclude that Sanders did not make her "prior drug use" comments to the other three jurors for the purpose of influencing them to agree to a guilty verdict. As part of her in-chambers statements to the court, Sanders indicated that her comments were made solely in response to queries from the other jurors about the fact that she had previously known appellant. Sanders further told the trial court that, after she made her reference to the prior drug use, she emphasized to the other jurors that she would not be predicating her verdict upon her knowledge of appellant's background. During her in-chambers statements, Juror Zee confirmed Sanders' assertion as to how she concluded her comments. Accordingly, the trial court justifiably found that Sanders had no intention to contaminate her fellow jurors.

9

{¶36} More importantly, at the close of the in-chambers session, the trial court again instructed Juror Sanders that she could not based her verdict upon her "outside" knowledge or upon whether she thought appellant was a good or bad person. Sanders then fully acknowledged this point. In light of this, the trial court could further find that Sanders would be able to set aside any pre-conceived notions she might have had as to appellant, and predicate her verdict solely upon the evidence presented at trial. Accordingly, Sanders was not *actually* biased against appellant and could not have been challenged for cause under Crim.R. 24(C)(9).

{¶37} As a separate argument under this assignment, appellant contends that, even if Sanders did not intend to do so, her comments during deliberations still had the effect of contaminating the other jurors who participated in their conversation. Appellant notes that, as part of her statement to the trial court, Juror Zee quoted Juror Sanders as saying that she wondered whether the prior drug use was a "factor" in the commission of the grand theft. According to appellant, the "factor" comment was particularly harmful because there had been no evidence at trial that his drug problem played any role in the theft of Kelly's truck.

{¶38} After the in-chambers questioning ended, the trial court gathered all 12 jurors in the courtroom and asked whether any of them heard a fellow juror refer to his/her own personal knowledge during deliberations. Even though none of the jurors responded affirmatively to this query, the trial court still proceeded to instruct the jurors that they could not consider the personal knowledge of any one juror, and had to limit their deliberations to the trial evidence. Therefore, even though Sanders' comments at the outset of deliberations were improper, the trial court was able to remedy the problem

10

before the jury made its decision. Furthermore, there is nothing to indicate that the jury failed to follow the court's instruction as to the use of personal knowledge in rendering its verdict.

{¶39} Taken as a whole, appellant was not denied his right to a fair trial before impartial jurors. Despite the fact that Juror Sanders had personal knowledge of appellant's background, she was steadfast in her assertions that she would not consider that knowledge in deliberating with the other jurors. Moreover, although Sanders referenced this knowledge in speaking with three other jurors, she never conveyed the actual substance of her knowledge, and the trial court took steps to ensure that the other jurors did not consider her limited comments as part of their deliberations. Hence, since the trial court acted within its sound discretion in not granting a mistrial, his first assignment lacks merit.

{¶40} Under his second assignment, appellant contends that he was denied his right to effective assistance of trial counsel because his attorney never expressly moved the trial court for a new trial in light of Juror Sanders' actions. After initially considering Juror Zee's written note, the trial court sua sponte raised the issue of whether it would be necessary to declare a mistrial. But, upon investigating the dispute through the three in-chambers interviews, the trial court indicated that it would provide further instructions to all twelve jurors, and then allow the deliberations to go forward. When the trial court inquired whether the defense wanted to raise any objections, trial counsel merely stated that the proposed procedure appeared to be the only acceptable remedy.

{¶41} Appellant's trial counsel never expressly moved the trial court for a mistrial based upon Juror Sanders' conduct. Nevertheless, given our analysis under appellant's

11

first assignment, the lack of a motion did not affect the outcome of the trial because, under the circumstances, the trial court correctly found that a mistrial was not necessary to adequately protect his right to a fair trial. In the absence of any prejudicial effect, appellant cannot establish he was denied effective assistance of trial counsel. *See, generally, State v. Allen*, 11th Dist. Lake No. 2011-L-157, 2013-Ohio-434, ¶15. Therefore, appellant's second assignment is also without merit.

{¶42} Under his last assignment, appellant maintains that the trial court abused its discretion in imposing a near-maximum prison term of 17 months for a fourth-decree felony. Essentially, he argues that, in predicating its sentencing determination primarily upon the fact that he had a drug-abuse problem, the trial court considered a factor that was irrelevant to the facts of this case. Citing R.C. 2929.12(D)(4), appellant asserts that a pattern of drug abuse can only be considered when the drug use is "related" to the underlying crime, and that the facts of this case showed that the "theft" of Kelly's vehicle had nothing to do with his drug habit.

{¶43} At the outset of the sentencing hearing, appellant's trial counsel requested that the trial court impose a 90-day term in the county jail so that he could participate in the jail's abuse treatment program. In rejecting this request, the trial court held that a 90-day term was not sufficient because it was extremely likely that appellant would commit additional criminal offenses in the future. This holding was based upon the trial court's finding that appellant had a serious drug problem. In support of this finding, the court noted that: (1) appellant's scheduled trial for July 18, 2012 was continued because he had appeared in court while under the influence of multiple illegal drugs; (2) during his interview with the county probation department, he admitted that he was unable to

12

maintain steady employment due to his drug problem; (3) he also admitted he had no desire to quit taking drugs, and that he intended to use them again following his release from prison; and (4) he refused to provide information for the intake assessment form needed for placement in NEOCAP, a four-month lock-down drug treatment facility.

{¶44} R.C. 2929.11(A) provides that the two basic purposes of felony sentencing are to punish the offender and protect the public from the commission of new crimes by the offender. Division (B) of the statute then states that, in addition to satisfying the two cited purposes, a felony sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶45} R.C. 2929.12 delineates a list of factors that a trial court should consider in determining the seriousness of an offense and the likelihood that a defendant will be a repeat offender. In relation to recidivism, division (D)(4) of the statute provides that the following factor supports a finding that the defendant is likely to commit future crimes:

{¶46} "(4) The offender has demonstrated a pattern of drug or alcohol abuse *that is related to the offense*, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse." (Emphasis added.)

{¶47} Under the plain and unambiguous wording of the statute, it is not required that the defendant be convicted of an actual drug offense before the "abuse" factor can be considered in imposing sentence. Instead, the statute employs broader language; i.e., the factor is applicable whenever the pattern of drug or alcohol abuse is "related" to the underlying offense. Hence, in order for the "abuse" factor to apply, there must be a

13

logical connection between the commission of the crime and the defendant's pattern of drug or alcohol abuse.

**{¶48}** In this case, appellant asserts that the necessary connection between his drug abuse and the theft of Kelly's vehicle did not exist. In support, he emphasizes that there was no evidence at trial that he was "on" drugs on the day that the truck was sold for scrap. He further notes that his girlfriend, Marissa Pentek, testified the $200 they obtained in selling the vehicle was only used to pay certain household debts.

**{¶49}** However, although there was no reference to appellant's drug use during the trial itself, other materials properly before the trial court demonstrated that there was a sufficient connection between the theft and the drug use. As part of the presentencing report, appellant expressly admitted to the interviewer that he had quit his last job as a direct result of his drug use. Therefore, it was reasonable for the trial court to conclude the need for money obtained through the sale of Kelly's vehicle was attributable to appellant's lack of employment caused by drug use.

**{¶50}** Furthermore, the materials before the trial court supported the conclusion that appellant was very likely to continue to abuse illegal drugs in the future. In addition to the fact that appellant refused to complete the intake assessment form for placement at NEOCAP, he specifically told the adult probation department that he fully intended to resume his drug use upon his release from incarceration. In light of this, the trial court could infer that appellant was very likely to engaged in future criminal behavior in order to sustain his drug use.

**{¶51}** If a felony sentence clearly and convincingly complies with all applicable rules and statutes, it will be upheld on appeal unless the defendant/appellant can show

an abuse of discretion by the trial court. *State v. Bisson*, 11th Dist. No. 2012-P-0050, 2013-Ohio-2141, ¶13, quoting *State v. Vargo*, 11th Dist. No. 2010-P-0065, 2011-Ohio-6690, ¶21. Appellant has not disputed that his 17 month sentence falls within the permissible range for a fourth-degree felony; thus, his sentence can only be subject to reversal if the trial court's decision did not comport with reason or the trial record. *Id*. Pursuant to the foregoing discussion, the trial court's sentencing analysis was consistent with law and the facts disclosed in the presentencing report. That is, a longer prison term is justified to adequately protect the public because appellant's pattern of drug abuse is highly likely to lead to the commission of future crimes.

{¶52} As the trial court acted within the scope of its discretion in setting the length of appellant's prison term, his third assignment is not well-taken.

{¶53} Pursuant to the foregoing, none of appellant's three assignments have merit. Therefore, it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOLLE, dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOLLE, dissents with a Dissenting Opinion.

{¶54} I respectfully dissent.

{¶55} A criminal defendant has a constitutional right to an impartial jury. *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶20, citing *Morgan v. Illinois*, 504 U.S.

15

719, 729-730 (1992). Voir dire is a mechanism to seat an impartial jury so that the due process rights of a defendant are protected. *Id.* Misconduct of the jury is grounds for a new trial. Crim.R. 33(A)(2).

{¶56} In this case, Juror #11, Rebecca Sanders, commented during voir dire that she only had minor contact with appellant. Specifically, she indicated that the only knowledge she had of appellant was driving him and his siblings on her school bus about six years prior to the trial and that she had known his parents but had not spoken to them "for awhile." Sanders claimed that she had no other knowledge of the case or any reason to believe she could not be a suitable juror.

{¶57} However, after deliberations had started, it became apparent that Sanders knew much more than her voir dire had suggested. A fellow juror indicated that Sanders made comments during deliberations about appellant's prior criminal history, drug use, and character, none of which was discussed at trial. Sanders herself admitted to having heard certain things about appellant's drug problems. This information may have led Sanders, and other jurors, to adopt a theory that the crime was drug-related, which is unsupported by the evidence. The record reveals that the other jurors were not only affected by this information, but actually sought it out from Sanders in order to presumably help them in making their decisions. Clearly, the integrity of the proceedings was compromised.

{¶58} Based on the facts presented, appellant was deprived of his constitutional right to an impartial jury. Therefore, this case should be reversed and remanded, as I believe the trial court erred in failing to grant a new trial based on juror misconduct.

{¶59} Thus, I dissent.

16