[Cite as *Casares v. Mercy St. Vincent Med. Ctr.*, 2016-Ohio-5542.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

David Casares                           Court of Appeals No. L-15-1313

      Appellant                     Trial Court No. CI0201502090

v.

Mercy St. Vincent Medical Center, et al.     **DECISION AND JUDGMENT**

      Appellees                     Decided:  August 26, 2016

* * * * *

Gary W. Osborne and Jack S. Leizerman, for appellant.

John S. Wasung, David T. Henderson and Susan Healy Zitterman,
for appellees.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas, granting appellee's, Fulton County Health Center ("FCHC"), motion for summary judgment.  Because we find that a reasonable factfinder could conclude that appellant, David Casares, was looking to the hospital to provide him with emergency medical care, we reverse.

## A. Facts and Procedural Background

{¶ 2} This medical malpractice action stems from an incident that occurred on August 29, 2010. On that date, Casares was in attendance at a wedding party at a friend's residence in Fayette, Fulton County, Ohio, where he consumed excessive quantities of alcohol, causing him to become intoxicated. At approximately 4:00 a.m., Casares decided to dive into an above-ground swimming pool at the residence. As a result of his dive, Casares fractured his cervical spine, causing him to lose consciousness. Casares was removed from the pool and transported to FCHC via Fulton County EMS. The record includes an affidavit from the paramedic that responded to the scene of the party, Ben Kohler, in which Kohler stated that the EMS team decided to transport Casares to FCHC based on its proximity to the wedding party. At the time of his transport, it was believed that Casares was suffering from hypothermia.

{¶ 3} Upon arrival at FCHC, Casares was transferred into the care of James Lewis, M.D. Casares continued to be obtunded while in Dr. Lewis's care, and was eventually airlifted to Mercy St. Vincent Medical Center ("MSVMC") in Toledo. Ultimately, Casares suffered significant injuries from the incident, including permanent injury to his spinal cord and quadriplegia.

{¶ 4} As a result of his injuries, Casares filed a complaint in the instant action, asserting a claim for medical malpractice against MSVMC, Dr. Lewis, and FCHC.[1] In

---

[1] Casares previously filed a medical malpractice action against these defendants, but said action was voluntarily dismissed pursuant to Civ.R. 41(A)(1)(a) on April 3, 2014.

2.

particular, the complaint alleges that Dr. Lewis "negligently failed to take any cervical spine fracture or spinal cord injury precautions, by placing a cervical collar, and he failed to diagnose and treat [Casares'] cervical fracture." Likewise, Casares asserts that the life flight crew, acting in their capacity as employees of MSVMC, were negligent in their failure to secure his cervical spine by the placement of a cervical collar. Additionally, Casares alleged that Dr. Lewis, an independent contractor, was "acting as an ostensible agent of [FCHC], and he was acting within the scope of his ostensible agency, and thus his negligence is imputed to [FCHC] by virtue of the doctrine of respondeat superior."

{¶ 5} Approximately four months after Casares filed his complaint, FCHC filed a motion for summary judgment, in which it argued, inter alia, that it could not be held liable for Dr. Lewis's alleged negligence through the theory of agency by estoppel. Citing the Supreme Court of Ohio's articulation of the relevant test for agency by estoppel set forth in *Clark v. Southview Hospital & Family Health Ctr.*, 68 Ohio St.3d 435, 628 N.E.2d 46 (1994), FCHC asserted that Casares could not show that he was "looking to FCHC for care as opposed to a particular practitioner" because he was unconscious during the relevant period and thus lacked the cognitive ability to do so.

{¶ 6} In response to FCHC's motion, Casares argued that *Clark* provides the patient with a "right to assume" that the treatment he or she receives at an emergency department is rendered through hospital employees, and not independent contractors. To that end, Casares filed an affidavit in which he asserted that he assumed that his care at FCHC would be provided by hospital employees. According to Casares, the evidence in

3.

the record failed to establish that he merely viewed FCHC as the location where he would be treated by his own physician. Further, Casares asserted that he had no notice or knowledge that Dr. Lewis was an independent contractor. According to Casares, the fact that he was unconscious was irrelevant.

{¶ 7} Upon consideration of the foregoing arguments, the trial court issued its decision on FCHC's motion for summary judgment on October 14, 2015. The trial court agreed with FCHC that Casares did not meet his burden of showing that he "looked to" FCHC for care as opposed to Dr. Lewis because his lack of consciousness precluded him from doing so. Consequently, the court found that Casares could not demonstrate that FCHC was liable for Dr. Lewis's negligence under principles of agency by estoppel as set forth in *Clark*. Therefore, the trial court granted FCHC's motion for summary judgment.

{¶ 8} Thereafter, the court issued a separate order, upon Casares' motion, finding that there is no just reason for delay and declaring its summary judgment order a final appealable order. Casares' timely notice of appeal followed.

## B. Assignment of Error

{¶ 9} On appeal, Casares assigns one error for our review:

> The trial court erred when it held that appellee FCHC could not be held liable under the agency by estoppel doctrine for the negligence of independent contractor, emergency department physician James Lewis, M.D. as a matter of law.

4.

## II. Analysis

{¶ 10} Summary judgment decisions are reviewed by the appellate court de novo, using the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). To succeed on a motion for summary judgment, a party must show that (1) no genuine issues of material fact exist, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, when viewing the evidence most favorable to the nonmoving party, and that conclusion supports the moving party. Civ.R. 56(C). When a motion for summary judgment is made and supported, the opposing party then has the burden of setting forth specific facts showing there is a genuine issue for trial. Civ.R. 56(E).

{¶ 11} In his sole assignment of error, Casares contends that the trial court erred in granting FCHC's motion for summary judgment based upon a flawed interpretation of the Supreme Court of Ohio's decision in *Clark*, *supra*. In *Clark*, the patient was suffering an asthma attack when she decided to drive herself to the hospital for care. The patient ultimately passed away five hours after arriving at the hospital. The plaintiff, who was the mother of the patient, subsequently brought a medical malpractice and wrongful death action against the emergency room physician and the hospital. Like the present case, the emergency room physician in *Clark* was not an employee of the hospital. Rather, the physician was an independent contractor.

{¶ 12} At the outset, the court stated the general rule that an employer is vicariously liable for the torts of its employees or agents, but not for the negligence of an

5.

independent contractor. *Clark*, 68 Ohio St.3d at 437, 628 N.E.2d 46. However, the court went on to note an exception to this general rule, initially articulated in *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990). Under this exception a hospital could be held liable under the doctrine of agency by estoppel for the negligent acts of a physician to whom it granted staff privileges where "(1) the hospital made representations leading the plaintiff to believe that the negligent physician was operating as an agent under the hospital's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship." *Albain* at paragraph four of the syllabus. Regarding the reliance element, the court in *Albain* went on to explain that "the question is whether the plaintiff relied on the ostensible agency relationship, not whether the plaintiff relied on the reputation of the hospital." *Id.* at 263. In other words, in order to establish the reliance element, a plaintiff would have to demonstrate that she would have refused treatment if she had known the physician was not an employee of the hospital. *Id.* at 264.

{¶ 13} Upon consideration of its holding in *Albain*, the Supreme Court of Ohio determined that it was "virtually impossible" for plaintiffs to prove that they would have refused care if they had known that the treating physician was not a hospital employee. *Clark* at 440. The court reasoned that the reliance element "forces the emergency patient to demonstrate that she would have chosen to risk further complications or death rather than be treated by a physician of whose independence she had been unaware." *Id.* Additionally, the court found that the test set forth in *Albain* would require the patient to

6.

"ascertain and understand the contractual arrangement between the hospital and treating physician, while simultaneously holding that her belief upon arrival that the hospital would provide her with a physician is insufficient." *Id.* Thus, the court found that the *Albain* test was unworkable, as it would be "virtually impossible for the plaintiff, especially in a wrongful-death case, to establish reliance * * *." *Id.*

{¶ 14} Having struck down the agency by estoppel test set forth in *Albain*, the court proceeded to craft a new test that relaxed the reliance element, which it set forth in its syllabus as follows:

> A hospital may be liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care. *Clark*, 68 Ohio St.3d 435, 628 N.E.2d 46, syllabus.

{¶ 15} Ultimately, the court determined that the hospital was estopped from denying that the treating physician was its employee. *Id.* at 446. The evidence supporting the court's conclusion consisted of direct and indirect representations made by the hospital that led the patient to believe that the physician was an agent of the hospital. Further, there was evidence in the record showing that the defendant hospital was not the one closest to the patient's home. Despite the lack of proximity, the patient was

7.

instructed to go to the defendant hospital by her mother because doctors were there around the clock. Based on this information and other promotional material that mother had seen, mother understood that the emergency room physicians were employees of the hospital. Mother communicated this understanding to the patient prior to the asthma attack. Thus, mother believed that if the patient "had any control of herself at the time," she would have chosen to go to the defendant hospital. *Id.* at 436.

{¶ 16} In this case, there is no dispute that FCHC held itself out to the public as a provider of medical services and that Dr. Lewis was an independent contractor and not an employee of the hospital. However, the parties disagree as to whether Casares can establish that he looked to FCHC to provide him with care in light of his lack of consciousness during the relevant time period. The parties have been unable to locate any Ohio appellate decisions applying the agency-by-estoppel test to a factual circumstance in which the patient was unconscious when the decision was made to transport the patient to the hospital. Likewise, our research has uncovered no such authority.

{¶ 17} Helpful to our resolution of the present issue, the *Clark* court, in discussing the second element of the agency-by-estoppel test, noted that

> "[T]he critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this

8.

determination involves resolution of the question of whether the hospital provided the plaintiff with [the treating physician] or whether the plaintiff and [the treating physician] had a patient-physician relationship independent of the hospital setting." *Clark*, 68 Ohio St.3d at 439, 628 N.E.2d 46, quoting *Grewe v. Mt. Clemens Gen. Hosp.*, 404 Mich. 240, 251, 273 N.W.2d 805 (1977).

{¶ 18} Here, the record is clear that Casares had no prior patient-physician relationship with Dr. Lewis. Nonetheless, FCHC argued, and the trial court agreed, that Casares' lack of consciousness at the time of his transport to FCHC, and throughout the duration of his treatment, rendered him incapable of "looking to" FCHC for his medical treatment, thereby precluding recovery from FCHC for the alleged negligence of Dr. Lewis. In response, Casares contends that it would be unjust to preclude him from recovery against FCHC simply because his injuries were so significant that they left him unconscious. He asserts that the decision to bar recovery to unconscious patients "defies reality, logic, equity and justice." We are inclined to agree with Casares.

{¶ 19} We disagree with the narrow interpretation of *Clark* advanced by FCHC, which would require Casares to demonstrate that he personally made the decision to go to the hospital for medical treatment. Such an interpretation of the agency-by-estoppel test set forth in *Clark* would lead to absurd results in cases where the patient is incapable of making a decision whether through minority, incompetency, or, as in this case, unconsciousness. This would lead to an arbitrary imposition of vicarious liability based

9.

on the patient's capacity to make a decision at all rather than a decision to receive treatment from a specific physician as opposed to the hospital in general, which is the focus of the test in *Clark*. A more reasonable reading of *Clark* would be that its use of the term "patient" includes the patient or those making decisions on behalf of the patient. In that regard, Kohler, the responding EMT, testified in his affidavit that "Casares was taken to [FCHC] for treatment based on my assessment. It was the closest hospital and appropriate based on my findings."

{¶ 20} Furthermore, our rejection of FCHC's narrow interpretation of the agency-by-estoppel test is supported by the public policy language from *Clark*. Speaking specifically of emergency rooms, the court stated that

> the emergency room has become the community medical center, serving as the portal of entry to the myriad of services available at the hospital. As an industry, hospitals spend enormous amounts of money advertising in an effort to compete with each other for the health care dollar, thereby inducing the public to rely on them in their time of medical need. The public, in looking to the hospital to provide such care, is unaware of and unconcerned with the technical complexities and nuances surrounding the contractual and employment arrangements between the hospital and the various medical personnel operating therein. Indeed, often the very nature of a medical emergency precludes choice. Public policy dictates that the

public has every right to assume and expect that the hospital is the medical provider it purports to be. *Clark*, 68 Ohio St.3d at 444, 628 N.E.2d 46.

{¶ 21} In light of the complexity of modern hospitals and their various contractual arrangements, the court stated: "Unless the patient merely viewed the hospital as the situs where her physician would treat her, she had the right to assume and expect that the treatment was being rendered through hospital employees and that any negligence associated therewith would render the hospital liable." *Clark* at 445.

{¶ 22} Based upon the foregoing, we hold that a hospital may be held liable under the doctrine of agency by estoppel for the negligent acts of its independent contractor emergency room physician where the patient is unconscious and without notice of the independence of the physician at the time of paramedic transport to the emergency room.

{¶ 23} In this case, there is no evidence to suggest that Casares viewed FCHC as the situs where his personal physician would treat him. Indeed, Casares stated in his affidavit that he would not have expected to be treated by his Toledo-based primary care physician in FCHC's emergency department. Rather, Casares "assumed that physicians working in hospital emergency departments were employed by the hospital." Moreover, the record is devoid of any evidence that Casares possessed knowledge or notice as to Dr. Lewis's independent contractor status.

{¶ 24} Because a factfinder, viewing the evidence in a light most favorable to Casares, could conclude that a genuine issue of material fact exists regarding whether

11.

Casares was looking to FCHC to provide him with his emergency medical care, we find that the trial court erred in granting FCHC's motion for summary judgment.

{¶ 25} Accordingly, Casares' sole assignment of error is well-taken.

### III. Conclusion

{¶ 26} The judgment of the Lucas County Court of Common Pleas is reversed, and the matter is remanded to the trial court for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                                        _____
                                                             JUDGE

Stephen A. Yarbrough, J.     
CONCUR.                                  _____
                                                             JUDGE

James D. Jensen, P.J.         _____
CONCURS IN JUDGMENT ONLY.                JUDGE