[Cite as *Casares v. Mercy St. Vincent Med. Ctr.*, 2020-Ohio-1651.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

David Casares

Appellant

v.

Mercy St. Vincent Medical Center, et al.

Appellees

Court of Appeals No. L-19-1043

Trial Court No. CI0201502090

**DECISION AND JUDGMENT**

Decided: April 24, 2020

* * * * *

Gary W. Osborne, Jack S. Leizerman and Stephen A. Skiver,
for appellant.

Douglas G. Leak and Steven J. Hupp, for appellee James Lewis, M.D.

Beth A. Wittmann, John S. Wasung and David T. Henderson,
for appellee Fulton County Health Center.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas from a jury verdict in favor of appellees. For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** On April 3, 2015, plaintiff-appellant David Casares, filed a complaint against defendant-nonappellee Mercy St. Vincent Medical Center and defendants-appellees James Lewis, M.D. ("Dr. Lewis") and Fulton County Health Center ("FCHC"), arising from emergency medical care he received five years earlier. The underlying facts in this medical malpractice litigation were previously reviewed by this court and will not be repeated here. *Casares v. Mercy St. Vincent Med. Ctr.*, 6th Dist. Lucas No. L-15-1313, 2016-Ohio-5542.

**{¶ 3}** The seven-day trial of this matter commenced on January 28, 2019, with the voir dire of 27 prospective jurors. The trial court previously ruled that each party would receive three peremptory challenges pursuant to Civ.R. 47(C). During voir dire a total of two prospective jurors were challenged for "good cause" by appellant. The first challenged juror was excused by the trial court, with no objections, but pursuant to R.C. 2313.14(A)(4) after further examination. The second challenged prospective juror was number nine, Donald Hayward ("Juror 9"), who was not excused for good cause after the defendants objected and after further examination. Appellant used his first peremptory challenge to remove Juror 9. To seat a jury of eight and four alternates, appellant used all three of his peremptory challenges on prospective jurors, as did each defendant, and appellant used his two peremptory challenges on prospective alternate jurors, as did each defendant.

**{¶ 4}** On February 7, 2019, the jury returned a verdict in favor of defendants-appellees and against appellant, and the trial court's judgment entry on jury verdict was

2.

journalized on February 13, 2019. Appellant then filed his notice of appeal setting forth two assignments of error.

     I. The trial court abused its discretion by granting each defendant three peremptory challenges when their interests and defense were essentially the same and not antagonistic.

     II. The trial court abused its discretion when it failed to strike juror number nine for cause.

{¶ 5} It was within the trial court's discretion to address the challenges for cause prior to the peremptory challenges. Civ.R. 47(B). We will address appellant's second assignment of error first.

## I. Challenging a Potential Juror for Cause

{¶ 6} Appellate review of the trial court's determination of whether a prospective juror should be disqualified for cause is for an abuse of discretion. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When applying the abuse of discretion standard, we are not free to substitute our judgment for that of the trial court. *Berk* at 169.

{¶ 7} In support of his second assignment of error, appellant argues the trial court abused its discretion when it failed to strike prospective Juror 9 for cause. Citing former

3.

R.C. 2313.42(J) and 2313.43, appellant argues Juror 9's answers during voir dire required the trial court to have even the slightest doubt as to his ability to be fair, impartial, and entirely unbiased. Appellant argues that Juror 9 questioned his own ability to be completely unbiased when he admitted coming from a family with many "medical people" in it and growing up hearing about the importance of malpractice insurance. Appellant argues Juror 9 further admitted he would not want him on a jury in a medical malpractice case because he gives the impression of bias towards medical personnel. Appellant concludes he was prejudiced because Juror 9 was not rehabilitated to the point of eliminating all vestiges of his declared bias: "Realistically, there can be no true rehabilitation (changing of a person's bias) that occurs over a span of a few minutes, and it borders on fantasy to believe otherwise."

{¶ 8} In response, Dr. Lewis argues the trial court did not abuse its discretion because Juror 9, "an engineer and not a medical professional," repeatedly and unequivocally stated as a juror he would be fair, impartial and follow the law and never stated he was biased. Rather, "[Juror 9] admitted that someone else might have 'the impression' that he would be biased based upon his family's medical background, [but] he, himself, would not be biased." Dr. Lewis further argues the trial court did not err because it first heard oral arguments pertaining to appellant's good cause challenge to Juror 9 and made specific findings supported by the record.

{¶ 9} In response, FCHC also argues the trial court did not abuse its discretion. FCHC argues where the trial court was satisfied with Juror 9's responses during voir dire,

R.C. 2313.17(B)(9) was not violated. The trial court observed Juror 9's demeanor during voir dire and had the opportunity to evaluate his credibility when responding to questions. FCHC further argues Juror 9 consistently reiterated on seven separate occasions, despite appellant's efforts to derail, that he could be a fair and impartial juror and would follow the law as given to him by the court.

{¶ 10} R.C. 2313.17(B) sets forth a list of "good causes for challenge to any person called as a juror":

(1) That the person has been convicted of a crime that by law renders the person disqualified to serve on a jury;

(2) That the person has an interest in the cause;

(3) That the person has an action pending between the person and either party;

(4) That the person formerly was a juror in the same cause;

(5) That the person is the employer, the employee, or the spouse, parent, son, or daughter of the employer or employee, counselor, agent, steward, or attorney of either party;

(6) That the person is subpoenaed in good faith as a witness in the cause;

(7) That the person is akin by consanguinity or affinity within the fourth degree to either party or to the attorney of either party;

5.

(8) That the person or the person's spouse, parent, son, or daughter is a party to another action then pending in any court in which an attorney in the cause then on trial is an attorney, either for or against any such party to another such action;

(9) That the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court.

{¶ 11} Each of the foregoing nine challenges "shall be considered as a principal challenge, and its validity tried by the court." R.C. 2313.17(C). R.C. 2313.17 replaced former R.C. 2313.42 and 2313.43, which were repealed effective May 22, 2012, pursuant to Substitute House Bill No. 268 of Ohio's 129th General Assembly. *See State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 94; *see also State v. Phillips*, 3d Dist. Wyandot No. 16-13-09, 2014-Ohio-3670, ¶ 82; *see also State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220, ¶ 32 (3d Dist.).

{¶ 12} Identical to R.C. 2313.17(C), former R.C. 2313.42 stated, "Each challenge listed in this section shall be considered as a principal challenge, and its validity tried by the court." *Hall v. Banc One Mgt. Corp.*, 114 Ohio St.3d 484, 2007-Ohio-4640, 873 N.E.2d 290, ¶ 22. The Ohio Supreme Court interpreted "principal challenges" to be the enumerated "good cause" reasons to challenge a prospective juror listed under former R.C. 2313.42(A) through (I), now R.C. 2313.17(B)(1) through (8). *Id.* at ¶ 28. A "principal challenge" to a prospective juror means that if a court finds the prospective

6.

juror's disqualification under former R.C. 2313.42(A) through (I), now R.C. 2313.17(B)(1) through (8), to be valid, then there is a conclusive presumption of the prospective juror's disqualification, and the trial court must dismiss the prospective juror. *Id.* at syllabus. As a result, the prospective juror may not be seated through rehabilitation or the trial court's exercise of discretion, even if the prospective juror pledges to be fair. *Id.*

{¶ 13} In contrast to a "principal challenge" the Ohio Supreme Court found that a "challenge to the favor" permitted a party to assert a challenge when no "principal challenge" exists, subject to an examination for the purpose of determining whether the potential juror can be impartial. *Id.* at ¶ 29.

{¶ 14} In affirming the distinction between a "principal challenge" and "a challenge to the favor," the Ohio Supreme Court declared former R.C. 2313.42(J), now R.C. 2313.17(B)(9), to be "a challenge to the favor" because it "requires the court to make a subjective determination about a potential juror's fairness and impartiality and therefore requires the exercise of judicial discretion." *Id.* at ¶ 1, 38, citing *Berk*, 53 Ohio St.3d 161, 559 N.E.2d 1301, at syllabus.

{¶ 15} The language of former R.C. 2313.42(J) is identical to R.C. 2313.17(B)(9), which is its replacement. *Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, at ¶ 94. "The following are good causes for challenge to any person called as a juror: * * * That he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." *Hall* at ¶ 21, quoting former R.C.

7.

2313.42(J). The Ohio Supreme Court found that former R.C. 2313.42(J), now R.C. 2313.17(B)(9), was a misplaced "principal challenge" because it was neither part of common law nor included in an earlier version of the statute. *Id.* at ¶ 37.

{¶ 16} We find that in response to appellant's "good cause" challenge to Juror 9, after examination by the trial court, the trial court did not find the prospective juror was disqualified pursuant to R.C. 2313.17(B)(1) through (8). R.C. 2313.17(C). We further find that appellant's challenge to Juror 9 pursuant to R.C. 2313.17(B)(9) was subject to the trial court's exercise of discretion. After a review of the transcript of voir dire proceedings, we find Juror 9 was sufficiently rehabilitated during their questioning, and the trial court's exercise of discretion was not abused. *Jackson v. Sunforest OB-GYN Assoc., Inc.*, 6th Dist. Lucas No. L-06-1354, 2008-Ohio-480, ¶ 48.

{¶ 17} Appellant also argues the trial court should have struck Juror 9 for raising doubt as to his being entirely unbiased pursuant to former R.C. 2313.43. R.C. 2313.17(D) is the replacement for former R.C. 2313.43. *Maxwell* at ¶ 94. R.C. 2313.17(D) states:

> any petit juror may be challenged on suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render the juror at the time an unsuitable juror. The validity of the challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased.

8.

{¶ 18} The transcript of the voir dire proceedings is in the record. Juror 9 introduced himself as a "retired engineer" with "[y]ears of college and no degree." Prospective jurors were asked about their "leanings."

Q: So is there anyone here that even just a little bit might be leaning towards the plaintiff or towards the defendant? I see you nodding sir, is that yes or [are] you just listening?

A: Yes.

Q: You are leaning one way or the other?

A: Yes.

Q: Which way are you leaning, sir?

A: I tend to come from a background with a lot of medical people in it. And my grandfather was a doctor, my mother was a nurse, my aunts were all nurses, my uncles were doctors or something. So I grew up hearing about medical malpractice insurance and the significant effect that it has on the cost of health insurance for everybody. So I question whether, you know, I could be completely unbiased. I mean I will certainly try to be unbiased.

Q: Sure. Thank you very much for sharing. I appreciate it. * * * And sir, for yours it sounds like it's actually kind of a family thing that you have been raised with, would that be accurate?

A: Yes.

9.

Q: Would you say that is kind of like a family value or something that has been part of your life basically since you were a child?

A: Yes.

Q: So no matter – I mean it's something that you believe you don't come to opinions lightly, correct?

A: That's correct

Q: Okay. So no matter who would ask you if you could set that aside, it would be your belief that you couldn't set that aside because it's so deeply ingrained?

A: No, I wouldn't necessarily say that.

Q: Okay. And I don't mean to put words in your mouth.

A: As I said, I think I can try to be unbiased in this particular case. In a similar case I think I can be unbiased.

Q: Okay. And one thing that I want to kind of ask about because I want to make sure we're clear is the try, you know, we're all going to try, and just like I would try to give that cherry pie, you know, a good, fair competition, if I'm already inclined to not believe that that at cherry pie is going to be as good, then I wouldn't be a good judge for that case. So do you believe that you would be a good judge for this case?

A: I could be a judge.

Q: So a good judge for one side maybe and not a good judge for the other side?

A: I didn't say that. I think I could be a reasonable judge.

Q: Sorry, I didn't mean to cut you off. Did you have something else?

A: I may not be the best. I think I could be unbiased.

Q: If you were the plaintiff in this case would you want you as a juror on this case?

A: Probably not.

Q: Okay. Why not?

A: Because I give the impression that I would be biased towards medical personnel and particularly medical malpractice.

Q: Sure. Thank you. And I appreciate you being honest. I know it's not easy to talk in front of all these people, especially with me trying to understand exactly all you're saying, so I appreciate that. Thank you. Anybody else? * * *.

{¶ 19} We find that Juror 9 immediately contradicted any initial "leaning" towards "medical people." We further find that Juror 9 directly and consistently replied that he could, in fact, be an unbiased juror. He underwent further direct examination regarding his potential bias.

Q: Now we heard plaintiff's counsel asking the questions you grew up in a medical family. I have to ask you two very straight-forward, simple questions. If his Honor instructs you as a matter of law certain facts, certain – not facts – certain ways to address this case. And that you are to determine whether the injury was proximately caused by the negligence, will you follow those jury instructions?

A: Yes.

Q: Okay. When you take an oath as a juror, you swear to be unbiased, to be fair to both sides ad fair and impartial. In this case can you be fair and impartial or not, just tell us?

A: Yes.

Q: All right. And you think you can follow the law and treat both sides fairly?

A: Yes.

{¶ 20} After the trial court dismissed two jurors pursuant to R.C. 2313.14(A)(4), appellant then challenged Juror 9 for "good cause," and a bench discussion occurred. Appellant argued Juror 9 flipped when he "declared his bias and of course afterwards he said he could be fair and impartial, but then he said that he would not want him on the jury if he was a plaintiff. I mean we got all these jurors, there has to be some doubt as to whether he's entirely unbiased and under the statute he should be released." FCHC responded that Juror 9 "specifically said he would be a reasonable judge in this case. He

12.

said you don't have to be the best and no one is required to be the best." The trial court recalled, "I think he said in response to [Dr. Lewis' voir dire] he would follow the instruction of law, he could be fair and impartial. He did say that if he was the plaintiff would you want me for a juror and he said not, because it may give the impression of bias, not that he was biased, but it may give the impression of bias." When the issue was narrowed to the distinction between Juror 9's response regarding the perception of bias versus whether he had bias, the trial court concluded, "Because his exact words were [']give the impression of bias.['] I think he was – I mean I think he was fairly rehabilitated here by [Dr. Lewis' voir dire] questions. I'm going to overrule the objection or overrule the challenge for cause to [Juror 9]." There were no further challenges for cause by any party.

{¶ 21} We find that although appellant believed Juror 9 could never truly shed his bias, the record supports the trial court's obvious satisfaction with Juror 9's responses that his bias, if any, would not substantially impair the performance of his juror duties. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 107. Despite any factual contradiction between Juror 9's initial responses and his subsequent responses, the record shows the trial court resolved those questions of fact and did not abuse its discretion. *Id.* at ¶ 110. Since the trial court resolved the questions of fact to its satisfaction, we will not substitute our judgment, and Juror 9 need not be removed for cause. *Grundy v. Dhillon*, 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153, ¶ 52.

13.

{¶ 22} We reviewed the record and find the trial court did not abuse its discretion, and the trial court's attitude was not unreasonable, arbitrary or unconscionable, when it denied appellant's motion to disqualify for good cause Juror 9.

{¶ 23} Appellant's second assignment of error is not well-taken.

## II. Peremptory Challenges of Potential Jurors

{¶ 24} Appellate review of a trial court's determination of the scope of voir dire is for an abuse of discretion. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 31, *holding modified by State v. Downour*, 126 Ohio St.3d 508, 2010-Ohio-4503, 935 N.E.2d 828.

{¶ 25} In support of his first assignment of error, appellant argues the trial court abused its discretion when it allowed the defendants a combined total of six peremptory challenges of prospective jurors while plaintiff was allowed only three. Appellant argues that a medical malpractice case "poses a greater risk of jurors having strong feelings that predispose them to biases against these cases" because the overwhelming number of verdicts are for defendants. Appellant argues that in order for appellant "to get a fair trial," not only should the trial court have treated both defendants as one and limited them to a total of three peremptory challenges between them, but the trial court should also have allowed appellant's challenge for good cause of Juror 9 so that appellant could have used a peremptory challenge on another, unidentified, prospective juror. Appellant further argues the trial court misapplied Civ.R. 47(C), which does not require the interests of the defendants to be identical in all respects. Appellant urges this court to find that

14.

"absent a showing of antagonistic interests, peremptory challenges should be limited to the combined defendants."

{¶ 26} In response, Dr. Lewis argues the trial court did not abuse its discretion when it followed Civ.R. 47(C) and *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 512 N.E.2d 640 (1987). Dr. Lewis argues the law is clear that in order for the trial court to order Dr. Lewis and FCHC to a combined total of three peremptory challenges, their interests or defenses must be identical, such as whether they are represented by the same attorney, filed joint answers and pleadings, and asserted the same defenses that "stand or fall together." Dr. Lewis further argues his interests are not identical to FCHC where a jury could have found one defendant liable and not the other because, among other factors, appellant's claim against Dr. Lewis was medical negligence while appellant's claim against FCHC was agency by estoppel, and the jury received separate jury interrogatories on them. Dr. Lewis argues appellant was not prejudiced by the trial court's decision, and the jury that was ultimately empanelled was fair and impartial.

{¶ 27} In response, FCHC also argues the trial court did not abuse its discretion. FCHC argues Civ.R. 47(C) is clear that FCHC and Dr. Lewis are not "essentially the same" where "the defendants proceeded separately throughout the litigation through separate counsel, and asserted defenses that do not necessarily stand or fall together." FCHC argues: "Importantly, [FCHC] asserted unique defenses that, if proved, would absolve it from liability, potentially to the detriment of Dr. Lewis." FCHC argues the

15.

jury "could find against Dr. Lewis and not against FCHC], depending on their interpretation of the evidence presented and application of the law." FCHC argues appellant never requested the trial court grant it more peremptory challenges. FCHC further argues that any trial court error in failing to dismiss Juror 9 was harmless because appellant was not prejudiced where the jurors who sat were not shown to be prejudiced or challenged for good cause.

{¶ 28} Appellant filed his motion to limit peremptory challenges on January 9, 2019, and argued that FCHC should not independently receive three peremptory challenges because Civ.R. 47(C) authorized treating FCHC as "essentially the same" as Dr. Lewis because their interests were identical. Appellant further argued, "Unless the underlying claim of negligence is proven against defendant Lewis, there can be no liability against defendant [FCHC], who is along for the ride only under the theory of vicarious liability." FCHC opposed the motion, citing Civ.R. 47(C) and the *LeFort* factors affirming its entitlement to three peremptory challenges of its own.

{¶ 29} In its January 28, 2019 journalized judgment entry, the trial court stated:

> Subjudice, the Court is not persuaded that Defendants' interests are "essentially the same," nor does it find that their defenses stand or fall together. Contrary to Plaintiff's suggestion that FCHC is merely "along for the ride" with Dr. Lewis, the record is quite clear that Defendants have employed and maintained separate counsel and have separately participated in this litigation since its inception in 2012. Although both Defendants

16.

stand to benefit from a verdict in Dr. Lewis' favor, there is clearly no reciprocal benefit to Lewis in the event FCHC prevails. It is undisputed that Dr. Lewis was acting as an independent contractor when he rendered treatment to Plaintiff at FCHC, so Ohio law does not require the fact finder to find FCHC liable in the event it determines that Dr. Lewis' alleged negligence proximately caused Plaintiff's injuries. Significantly, there has already been an appellate determination in this matter that a factual question exists as to FCHC's potential liability under an ostensible agency theory should Dr. Lewis not prevail on the claim against him. Accordingly, it cannot be fairly said that Defendants' defenses stand or fall together. The Court finds that each Defendant is entitled to its full allotment of three peremptory challenges. (Footnote omitted.)

{¶ 30} The law on peremptory challenges in civil litigation is found in Civ.R. 47(C), which states:

> In addition to challenges for cause provided by law, each party peremptorily may challenge three prospective jurors. If the interests of multiple litigants are essentially the same, 'each party' shall mean 'each side.' * * * A prospective juror peremptorily challenged by either party shall be excused.

{¶ 31} This court previously determined that where the interests of multiple defendant parties are essentially different or antagonistic, then they are entitled to the full

17.

number of peremptory challenges. *Bernal v. Lindholm*, 133 Ohio App.3d 163, 175, 727 N.E.2d 145 (6th Dist.1999), citing *LeFort*, 32 Ohio St.3d at 125, 512 N.E.2d 640 (relying on language from former Civ.R. 47(B), now 47(C)). It is well established that each of the defendants must have "identical interests * * * to be considered as one party." *Id.* at 176; *Nieves v. Kietlinski*, 22 Ohio St.2d 139, 258 N.E.2d 454 (1970), paragraph one of the syllabus. This court applied a number of factors before concluding the interests of each defendant were not identical: (1) whether the defendants employed the same attorney to represent them, (2) whether each defendant filed separate answers and defenses to the complaint, (3) whether the defendants filed separate pleadings or motions, (4) whether each defendant could attempt to introduce separate evidence to prove that its conduct did not constitute the causes of action alleged in the complaint, (5) whether a jury could have found one defendant liable and not another (the so-called whether "the defenses asserted did not necessarily stand or fall together," and (6) whether the plaintiff was prejudiced by the trial court's decision granting three peremptory challenges to each defendant. *Bernal* at 175-176. Civil trials are not mandated to have an equal number of peremptory challenges for each side. *Id.* at 176.

{¶ 32} This court previously held that a jury could find FCHC independently liable under the doctrine of agency by estoppel for the negligent acts of Dr. Lewis, an independent contractor. *Casares*, 6th Dist. Lucas No. L-15-1313, 2016-Ohio-5542, at ¶ 22.

18.

{¶ 33} We find that during voir dire, appellant used his first peremptory challenge to remove Juror 9 without first objecting on the record that doing so would cause him prejudice. Failure to object when there was an opportunity to do so waives all but plain error. *LeFort* at 123-124. We do not find the existence of plain error that is necessary to prevent a manifest miscarriage of justice. *Id.* at 124.

{¶ 34} Appellant was not prejudiced because the trial court's decision to deny appellant's challenge of Juror 9 for "good cause" did not force appellant to exhaust his peremptory challenges since he still had two more available to him prior to seating the jury. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 87. "Thus, '[i]f the trial court erroneously overrules a challenge for cause, the error is prejudicial only if the accused eliminates the challenged venireman with a peremptory challenge *and* exhausts his peremptory challenges before the full jury is seated.'" (Emphasis in original.) *Id.*, quoting *State v. Tyler*, 50 Ohio St.3d 24, 30-31, 553 N.E.2d 576 (1990).

{¶ 35} This court has previously found no prejudice when an appellant used peremptory challenges after challenges for good cause were denied, and no abuse of discretion by the trial court was found. *Jackson*, 6th Dist. Lucas No. L-06-1354, 2008-Ohio-480, at ¶ 49-51. The real question for a reviewing court on the issue of prejudice and the use of peremptory challenges is whether substantial justice has been done, which we answer in the affirmative in this case. *Grundy*, 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153, at ¶ 33.

19.

{¶ 36} We reviewed the record and find the trial court did not abuse its discretion, and the trial court's attitude was not unreasonable, arbitrary or unconscionable, when it denied appellant's motion to limit the total number of peremptory challenges between both appellees.

{¶ 37} Appellant's first assignment of error is not well-taken.

### III. Conclusion

{¶ 38} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.           

Thomas J. Osowik, J.        

Christine E. Mayle, J.       
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.